PETERSON, Respondent, v. PETERSON, Appellant.

*February 7—March 7, 1961.*

For the appellant there was a brief and oral argument by *Anthony Frank* of Milwaukee.

For the respondent there was a brief and oral argument by *Thomas E. Dolan* of Milwaukee.

HALLOWS, J. The question is whether the trial court abused its discretion in allowing the respondent wife to remove the child to St. Paul. The majority of the cases deciding this point support the rule that if the parent who has custody of a child has good reason for living in another state and such course of action is consistent with the welfare of the child, the courts will permit the removal. See Annos. 154 A. L. R. 558, and 15 A. L. R. (2d) 468.

Generally, the same considerations which determine custody of children are applied to the question of removal of children out of the state. The controlling consideration is the welfare of the child and it has often been said by this court that the determination of that welfare is primarily the task of the trial court and, except where there is a clear abuse of discretion, the trial court's order should prevail. *Smith v. Smith* (1957), 1 Wis. (2d) 174, 83 N. W. (2d) 672; *Dodge v. Dodge* (1955), 268 Wis. 441, 67 N. W. (2d) 878.

The appellant strenuously argues that the paternal grandparents have not interfered with the respondent's raising of the child. We do not agree. During their entire married life, the parties lived in the home of the paternal grandparents, first in the same quarters and subsequently in the upper flat of the same house. Robert was born and lived there until the parties were divorced. During this time the grandparents attempted to direct the upbringing of the child. After the divorce the appellant husband visited the child and usually took him to visit the grandparents. While the appellant was in California for some six months, the grandparents made too-frequent visits and displayed a more-than-normal love and affection for the child. The respondent has

had difficulty keeping baby sitters because of the interference of the grandparents. There is also testimony that this four-year-old child uses foul language which he has learned by hearing his grandfather use it. This is disputed by the grandfather. The appellant claims the attention of the grandparents was merely normal love and affection but the evidence indicates the activities of the grandparents surpassed normal love and affection and were motivated by self-gratification and a strong desire to supplant themselves for the respondent in the mind and heart of the child. Instead of encouraging the bond between their daughter-in-law and her child, the grandparents abandoned the role of grandparents and assumed the role of parents.

The child is spoiled. When the mother attempts to discipline him, he calls for his grandparents and on occasions has thrown tantrums and stated that some day he is going to live with his grandparents and be rich. There is no doubt that the mother has and will have a difficult time raising this child. The continuance of the present circumstances does not offer any real hope for the proper upbringing of this child. There is no merit in the argument that this child of four years will suffer an emotional shock if separated from its present surroundings. A child of four easily adapts himself. But if the attachment of the child for its grandparents is of such a nature that its severance would produce emotional shock, then such relationship ought to be terminated.

The appellant urges the removal would be an undue hardship upon him. It is true that removal of the child will cause some hardship to the appellant because if he desires to visit the child, he will have to go to St. Paul, but such hardship flows from the divorce and from the unfortunate situation in which he finds himself. The difficulty and hardship of a parent, not having custody, in exercising his visitation rights must be subordinated to the welfare of the child and should

not prevent the court from allowing the removal of the child from the state.

We believe the trial court's decision is supported by the evidence. No hard and fast formula has yet been devised for determining what factors will ultimately assure the future welfare of a child. The trial court took the position the best interests of the child should be determined by considering also the person who has custody of the child. In determining a child's welfare, this court stated in *Jenkins v. Jenkins* (1921), 173 Wis. 592, 595, 181 N. W. 826, and quoted in *Acheson v. Acheson* (1940), 235 Wis. 610, 294 N. W. 6, that the accepted doctrine is:

". . . nothing can be an adequate substitution for mother love—for that constant ministration required during the period of nurture that only a mother can give because in her alone is duty swallowed up in desire; in her alone is service expressed in terms of love. She alone has the patience and sympathy required to mold and soothe the infant mind in its adjustment to its environment. The difference between fatherhood and motherhood in this respect is fundamental and the law should recognize it unless offset by undesirable traits in the mother. Here we have none so far as mother love is concerned."

The trial court thought the respondent mother was sufficiently enlightened, loving, understanding, endowed with good judgment, and had a sufficiently comprehensive plan for the future of the child to indicate that she had the genuine interests of the child at heart and could be depended upon to execute it. The plan of the respondent is to give up her job in Milwaukee, obtain one in St. Paul, and live with her married sister and her husband who have one-year-old twins. In this manner she hopes to be able to raise her child and guide his development in surroundings more conducive to his welfare. This course of action involves hardship on the

respondent because she has a good position in Milwaukee and has lived there all her life. However, she believes the change is necessary for the best interests of the child. Upon the record, we must agree.

The appellant argues that the trial court should have ordered an investigation by trained social workers and other public agencies and had the benefit of their investigation. Whether the trial judge would have been in any better position to decide this case with such assistance is a matter of conjecture. The trial judge has had considerable experience in these cases and with the work of the social agencies. It was within his discretion to seek the aid of available social agencies if he believed it would be helpful.

We do not believe the trial court abused its discretion in finding that the respondent had a good reason for living in St. Paul and her proposed course of action was consistent with the welfare of the child and would promote its best interests.

*By the Court.*—Order affirmed.