KING, Respondent, v. KING, Appellant.

*January 4—February 1, 1966.*

For the appellant there was a brief and oral argument by *John William Calhoun* of Fond du Lac.

For the respondent there was a brief by *Frinzi, Catania & Neubecker* of Milwaukee, and oral argument by *Dominic H. Frinzi*.

HALLOWS, J. The material facts underlying this appeal are undisputed. In July, 1964, after the custody of the children was affirmed in the defendant by the trial court and while that order was on appeal, the defendant resigned his $45,000-a-year job with Kiekhaefer Corporation and went into business in Fond du Lac, Wisconsin, with another executive of that corporation. This business failed within a few months. While unemployed, the defendant in December of 1964 married a widow who lived with her three children in California. In February, 1965, the defendant met with the plaintiff in an attempt to induce her to agree to allow him to take the children to California and to enter into a stipulation

to that effect. The plaintiff, instead of agreeing to sign a stipulation as she did for the original custody disposition, countered with a petition to the circuit court for the transfer of the custody of the children to her because of the changed circumstances. The defendant replied with a petition requesting permission to remove the children from the state and to modify the plaintiff's visitation rights.

The defendant argues there are not sufficient changes of circumstances to justify a change of custody and consequently the court was in error and abused its discretion in changing the custody from the defendant to the plaintiff. In its opinion the trial court found the defendant had developed symptoms of insecurity and instability; that he resigned a lucrative position; that he had difficulty keeping housekeepers to care for the children; that he was absent from his home frequently while in New York, California, and Hawaii and that he had been lax in keeping up the religious training of the children. There was some testimony the children were not well adjusted to their existing mode of life. At the time of the hearing the defendant had an offer of an executive position in California and contemplated living in his wife's home with her and her three children. He also was attempting to secure a better executive position than that offered in California.

In respect to the plaintiff the trial court found she had an ardent mother's love for her children; that she had established a suitable home in close proximity to school, church and playgrounds; that the children showed an unusual affection for her and that she had now shown a stable and settled outlook on life. The unsettled circumstances of emotional immaturity and extravagance, which disturbed the trial court at the first hearing, it now found to be in the past and no longer an adverse factor in determining the custody problem. In our first opinion we stated in reference to the conclusions which the trial court drew concerning the plaintiff, that there

was not very strong evidence to sustain them but at least they were not unreasonable inferences and "In a close case such as this an appellate court ought not reverse the findings of a trial court unless it is completely satisfied the trial court has clearly abused its discretion and decided the matter against the great weight and clear preponderance of the evidence." *King v. King, supra,* page 557. That rule of law is still applicable to this case.

We have often and vigorously said the best interest of the children of a divorce is the controlling consideration and the goal to be attained in the determination of their custody and we have admitted, as we must, there is no hard-and-fast rule or formula which as yet has been defined for determining what combination of factors will ultimately assure the future welfare of a child who is the product of a broken home.[1] Remarriage,[2] as well as removal from the state,[3] especially where the removal requires a change in the mother's visitation rights, has been held to be a sufficient change in circumstances for the court to reconsider the question of custody under our doctrine of changed circumstances.[4] Such change in circumstances does not necessarily require a change in custody. Generally, no one factor is determinative of where custody should lie; nor does the same combination of factors necessarily call for an identical answer. From experience, the various facts and circumstances as they then exist in their relationship to the child

[1] *Wendland v. Wendland,* ante, p. 145, 138 N. W. (2d) 185; *King v. King* (1964), 25 Wis. (2d) 550, 131 N. W. (2d) 357; *Welker v. Welker* (1964), 24 Wis. (2d) 570, 129 N. W. (2d) 134; *Greenlee v. Greenlee* (1964), 23 Wis. (2d) 669, 675, 127 N. W. (2d) 737; *Bliffert v. Bliffert* (1961), 14 Wis. (2d) 316, 111 N. W. (2d) 188.

[2] *Brown v. Brown* (1960), 9 Wis. (2d) 322, 101 N. W. (2d) 48; *Greenlee v. Greenlee, supra.*

[3] 17A Am. Jur., Divorce and Separation, pp. 24–26, sec. 833.

[4] *Bliffert v. Bliffert* (1961), 14 Wis. (2d) 316, 111 N. W. (2d) 188; *Greenlee v. Greenlee* (1964), 23 Wis. (2d) 669, 675, 127 N. W. (2d) 737.

must be evaluated to determine in whose custody the best interest of the child lies.

In spite of the strong policy favoring custody in the natural mother when she is fit,[5] the court on the first hearing decided that what he called the emotional instability and extravagance of the plaintiff was such it would be in the best interest of the children for them to remain with their father. On the present record, we can find no meritorious argument or reason why the natural mother should not now have the custody of her children, whom she wants and who want her. The conditions contemplated and upon which the custody was given to the father no longer exist and they did not produce a satisfactory solution of the custody problem. The children can no longer reside in their accustomed home, attend the same school or live in the same neighborhood, or indeed in Fond du Lac. The present question is really one of reappraising the problem in the light of the circumstances as they now exist and making a choice for the children of a life with their mother, who can give them an adequate home, her love and her training within the jurisdiction of the court, or a life with their father and a stepmother and her three children outside the jurisdiction of the court.

It is argued the home of the father would be more complete and natural, but we do not find in the record such facts as would convince us any more than it did the trial court that the home of the father would be superior in its influence in the development of the children to the homelife with their mother who is fit and capable of rearing them. If remarriage is to be the determining factor, then custody would depend upon which divorced parent wins the race to the altar. But

[5] *King v. King, supra; Welker v. Welker* (1964), 24 Wis. (2d) 570, 129 N. W. (2d) 134; *Peterson v. Peterson* (1961), 13 Wis. (2d) 26, 108 N. W. (2d) 126; *Acheson v. Acheson* (1940), 235 Wis. 610, 294 N. W. 6; *Jenkins v. Jenkins* (1921), 173 Wis. 592, 181 N. W. 826.

one should not be penalized for remarrying. Remarriage is a factor to be counted for or against custody, depending upon its bearing and effect upon the interests of the child.

About two months after the trial court made its decision the defendant on June 24, 1965, petitioned the court for a rehearing on the basis he then had a position in Dallas, Texas, and was there living with his wife and her children in a new home in a comfortable residential area. An affidavit of the second Mrs. King was filed which stated she would treat her husband's children as if they were her own and she was a good mother. This petition is hardly one for rehearing since it is based on changed circumstances; however, it makes very little difference because the trial court denied it on its merits. The only new factor of importance raised by the petition was the defendant, in fact, had a position which the court stated it had every expectation the defendant would secure in order to support his children. It 's true the trial court in transferring the custody stated the defendant was without a job. However, the court did not consider this factor decisive and was more concerned with the defendant's judgment in giving up the security of a $45,000-a-year job. It is likewise true the trial court stated there was no testimony from the second Mrs. King concerning her position on the custody issue; no doubt, this called forth the affidavit. But, assuming the verity of the affidavit, it is still not sufficient even when added to the other circumstances to deprive the children of the care of their natural mother.

In articulating this opinion we have summarized or picked out only salient facts. A reading of the testimony, both on the original appeal and on this appeal, convinces us the trial court committed no error and did not abuse its discretion in granting the plaintiff the custody of her children.

*By the Court.*—Orders affirmed.