KOSLOWSKY, Respondent, v. KOSLOWSKY, a/k/a FENGLER, Appellant.

*No. 83.  Argued December 2, 1968.—Decided January 7, 1969.*
(Also reported in 163 N. W. 2d 632.)

276

For the appellant there was a brief by *Westring & Martinson* of Green Bay, and oral argument by *Richard W. Westring*.

For the respondent there was a brief by *Plier & Plier* and *James H. Plier* and *Donald J. Plier*, all of Oconto, and oral argument by *Donald J. Plier*.

BEILFUSS, J.   Kay, the appellant mother, contends that the trial court abused its discretion by virtue of erroneous applications of the law. She argues (1) that the trial court did not apply the rule that the mother is to be

favored in custody matters; (2) that the court erroneously concluded that there must be a substantial showing of a change of circumstances because of the custody stipulation; (3) that the court erred in considering the mother's prior conduct; and (4) that the evidence does not support the trial court's findings and opinions as to the welfare of the children.

Basic to this court's review of custody disputes are the rules, often repeated:

"The trial court has wide discretion in determining custody matters, and its decision will not be upset unless there is evidence of a clear abuse of discretion. *Wendland v. Wendland* (1965), 29 Wis. (2d) 145, 138 N. W. (2d) 185; *Belisle v. Belisle* (1965), 27 Wis. (2d) 317, 321, 134 N. W. (2d) 491." *Farwell v. Farwell* (1967), 33 Wis. 2d 324, 327, 147 N. W. 2d 289.

"This court strongly defers to the trial court's findings in custody matters. The reason for this is, of course, the uniqueness of the situation involved in each custody award and the broad understanding of the particular problem which the trial court can achieve in the course of the hearing, which can never quite be duplicated by an appellate court upon a review of the record. We have stated in *Whitman v. Whitman* (1965), 28 Wis. (2d) 50, 56, 135 N. W. (2d) 835:

" ' "This court relies heavily upon the determination by the trial court." . . . Especially important is the fact that the trial court is in a better position than this court to determine the best interests of the children, . . . and to see and observe the parties and the way in which they conduct themselves.' " *Sommers v. Sommers* (1966), 33 Wis. 2d 22, 26, 27, 146 N. W. 2d 428.

There is no question but that our law recognizes the rule that other things being equal, the custody of the children with the mother is favored, especially with young children.[1] However, this legal guideline is subservient

---

[1] *See King v. King* (1966), 29 Wis. 2d 586, 139 N. W. 2d 635; *King v. King* (1964), 25 Wis. 2d 550, 131 N. W. 2d 357; *Welker v. Welker* (1964), 24 Wis. 2d 570, 129 N. W. 2d 134; *Peterson v. Peterson* (1961), 13 Wis. 2d 26, 108 N. W. 2d 126; *Acheson v.*

to the paramount rule that custody of minor children must depend upon what is in the best interests of the child's welfare. The best interests of the child rule applies whether the court is considering custody in the first instance or upon subsequent consideration and, because of the public interest in the welfare of children, transcends an agreement or stipulation of the parties.[2]

At the hearing to change the custody in September of 1967, quite extensive testimony and other proof was offered by both parties as to the past conduct of Kay; the present habits and manner of living of the parties and the children; the nature of the care, affection and guidance given to the children by Norman and his parents, and by Kay and her present husband at the times of visitation; the physical facilities of Norman's parents' home and Kay's present home; the educational, recreational and religious training of the children, and reports and evaluations by public welfare personnel following an investigation of the parties and their homes.

In considering the evidence the trial court stated, in part:

"It is not my belief that this woman should be penalized forevermore because of her conduct of several years ago . . . Such conduct is material now only in two respects. Frequently, future conduct of individuals can be predicted by a study of that individual's past conduct. A sound second reason, in my opinion, is that the parties stipulated that Norman should have the permanent care, custody and control of these children. There should appear some good reason why that stipulation should now be set aside."

The statement that ". . . the parties stipulated that Norman should have the permanent care, custody and control of these children. There should appear some good

*Acheson* (1940), 235 Wis. 610, 294 N. W. 6; *Jenkins v. Jenkins* (1921), 173 Wis. 592, 181 N. W. 826.

[2] *See King v. King* (1966), *supra*, pages 590, 591, and cases cited therein.

reason why that stipulation should now be set aside," standing alone and taken out of the context of the court's opinion is probably not technically correct.

The divorce in this case was uncontested. No hearing was had on the question of fitness nor a finding of fitness made. Prior to the divorce a hearing was had on the matter of temporary custody. Custody was awarded to Norman on the ground that Kay had abandoned the children. At the divorce proceedings, testimony of the plaintiff and a witness was taken to substantiate the allegations of the complaint. Whether testimony was taken calculated to ascertain the best interests of the children is not known. A reading of the record indicates that the court in granting the divorce relied primarily on the stipulation. In such a case the court's determination is not res judicata and the rule of substantially or materially changed circumstances does not apply. *King v. King* (1964), *supra.*

Under these circumstances the court should examine the question of fitness anew, using past conduct only as a guide to possible future conduct in view of existing circumstances. The paramount test again at this juncture must be "what is in the best interests of the minor child." However, in those instances where the record reveals that the questions of fitness or comparative fitness of the respective parents and the best interests of the child were considered by the court and based upon the evidence offered in support of a stipulation for custody, the stipulation, findings and judgment should not be set aside merely because of a change of heart of one of the stipulating parents. In those cases there should be a showing of a change of circumstances.[3]

[3] In *Wendland v. Wendland* (1965), 29 Wis. 2d 145, 156, 138 N. W. 2d 185, this court recommended the practice of appointing a guardian *ad litem* to protect the interests of the children in those instances "where the trial court believes that what may be in the best interests of the children may not be brought out by

There is, however, another concept, among others, that should be given some consideration in those instances where a court is called upon to make a redetermination of custody of the minor children of divorced parents. At the time of the separation or divorce the minor children are often placed in a new or at least different environment which can affect their well-being both physically and emotionally. If the present arrangements for custody are working out satisfactorily, considering the alternatives available, the children should not be uprooted and placed in a different environment unless it appears that the best interests of the child will be enhanced. We believe, as a generalization, that forced changes of custodial environment of minor children of divorced parents, without substantial justification, in themselves can have a detrimental effect upon the well-being and stability of the children.

We do not propose to discuss the evidence adduced at the hearing to change the custody of these children except to note that we have carefully examined the entire record before us, including the memorandum opinion of the trial court.

There is ample credible evidence that the children now and for the past five and one-half years were being well taken care of as to their physical, educational, recreational, religious and emotional needs by Norman and his parents in the parents' home.

The trial court did recognize that conditions were changing—that the children were getting a little older

the two contesting parties." While not at issue in the case, and we voice no criticism for failure to appoint a guardian *ad litem,* we recommend the practice of appointing a guardian *ad litem* to represent the interests of the children in those instances where the evidence is either nonexistent or inadequate to determine the comparative fitness of the parents and where the best interests of the child are. We also again commend the practice in contested hearings where it is apparent that the dispute is centered on the desire of the parents rather than the best interests of the child.

and that the grandparents were getting a little older. The trial judge stated, ". . . it may be a little more difficult each year for the grandmother to take care of these children. As of now, she is obviously doing a superb job."

The trial judge also acknowledged that the mother, Kay, had changed. She had remarried, her present moral conduct was good, her attitude toward the children was excellent, and the physical facilities available as a home for the children were very good. In recognition of these changes the trial judge opined that the children should spend more time with their mother and ordered the judgment amended to provide that in addition to the biweekly visitations the mother should have the children one week during the Christmas holidays and the entire month of July of each year.

It is apparent that the trial court was of the opinion that while future circumstances might warrant a change of custody the best interests of the children would not be served by a change of custody under existing circumstances.

We are of the opinion that the findings of the trial court are in accordance with proper legal standards and based upon adequate credible evidence. There has been no showing of an abuse of discretion.

*By the Court.*—Order affirmed.