GOCHENAUR, Appellant, v. GOCHENAUR, Respondent.

*No. 162. Argued October 30, 1969.—Decided November 25, 1969.*
(Also reported in 172 N. W. 2d 6.)

12

For the appellant there was a brief by *Robert J. Brady,* attorney, and *Jerome F. Pogodzinski* of counsel, both of Milwaukee, and oral argument by *Mr. Brady.*

For the respondent there was a brief by *Milton E. Zuleger,* attorney, and *Charles F. Polidori* of counsel, both of Milwaukee, and oral argument by *Mr. Polidori.*

WILKIE, J. One issue is dispositive of this appeal: Is a mother, who has never been declared unfit but who has stipulated to the custody of her three children being with the father at a hearing immediately preceding a temporary order placing custody of the children with the father, and who is subsequently adjudged the "guilty party" in the divorce action at which she did not appear and at which legal custody was granted to the father of those three children even though she had physical custody of two of the children, required to show a change of conditions at a hearing on her subsequent petition to obtain legal custody of all three of the children?

The error of the trial court here was in concluding that the plaintiff mother had the burden of proving a change of conditions since the original default divorce judgment awarded legal custody of the three children to the defendant father. Both the case of *King v. King,*[1] and the later case of *Koslowsky v. Koslowsky,*[2] illustrate that this is not correct when the assignment of custody in the original action was based on a stipulation of the parties without

[1] (1964), 25 Wis. 2d 550, 131 N. W. 2d 357. *See also King v. King* (1966), 29 Wis. 2d 586, 139 N. W. 2d 635.

[2] (1969), 41 Wis. 2d 275, 163 N. W. 2d 632.

a full-scale inquiry into what was then in the best interests of the children.

In *King v. King* a situation similar to the instant one was presented to this court. There the mother had stipulated to the custody of the children being with the father and a divorce was later granted to the mother by default. No testimony was taken on the question of whether the welfare of the children would be best served by carrying out the terms of the stipulation. The mother thereafter petitioned the trial court for a change of custody to her. After a hearing the trial court denied the change of custody and on appeal, this court affirmed, but stated:

"Since custody of the children was granted upon the stipulation of the parties without testimony being taken on the issue and no finding of fitness was made, the court's determination is not *res judicata* nor does the rule of changed circumstances apply. . . ."[3]

In *Koslowsky v. Koslowsky,*[4] a similar situation was again presented. In that case the mother left her children with her parents and ran off with a neighbor to California. The father thereafter took the children from the grandparents and started a divorce action. Prior to the trial, the father was given temporary custody of the children as a result of an order to show cause.

An uncontested divorce hearing was held and pursuant to a stipulation entered into by the parties and approved by the family court commissioner, the court awarded custody of the children to the father without any apparent testimony or findings as to the fitness or lack of fitness of either party.

The mother thereafter petitioned the court for a change of custody which was denied. On appeal this court affirmed but recognized that the court, in granting the divorce, relied primarily on the stipulation. This court again said that in such a situation the rule of substan-

[3] *King v. King, supra,* footnote 1, 25 Wis. 2d 550 at page 553.

[4] *Supra,* footnote 2.

tially or materially changed circumstances did not apply. This court further stated:

"Under these circumstances the court should examine the question of fitness anew, using past conduct only as a guide to possible future conduct in view of existing circumstances. The paramount test again at this juncture must be 'what is in the best interests of the minor child.' However, in those instances where the record reveals that the questions of fitness or comparative fitness of the respective parents and the best interests of the child were considered by the court and based upon the evidence offered in support of a stipulation for custody, the stipulation, findings and judgment should not be set aside merely because of a change of heart of one of the stipulating parents. In those cases there should be a showing of a change of circumstances." [5]

In the instant case the stipulation giving custody to the father was approved by the family court commissioner, yet there was no testimony taken at this juncture or inquiry made into what would be in the best interests of the children. The mother here, as did the mother in the first *King Case*, testified at the subsequent hearing on her petition to change custody, that she thought this stipulation was merely temporary and that it would not bar her from obtaining legal custody of the children at a future date.

After this stipulation the mother went to Florida where she met and shortly after went through a marriage ceremony with George Sears. Both used fictitious names in obtaining the marriage license. Thereafter she and Sears lived together as man and wife in various southern states. While this was highly improper and indiscreet, there was at no time a finding that the mother was unfit.[6] More-

---

[5] *Id.* at page 282.

[6] *See generally, Bliffert v. Bliffert* (1961), 14 Wis. 2d 316, 111 N. W. 2d 188; *Templeton v. Templeton* (1948), 254 Wis. 92, 35 N. W. 2d 223. *See also Wendland v. Wendland* (1965), 29 Wis. 2d 145, 138 N. W. 2d 185.

over, it was *after* the plaintiff had stipulated to the defendant's custody of the children that her improper liaison with Sears began. It is, of course, recognized that a specific finding of unfitness to have custody is not required as a prerequisite to an order denying custody.[7]

The plaintiff then came back to Wisconsin and by subterfuge took the two little girls back with her to Florida. The mother testified that the reason she did not also take her son was that the little boy wore leg braces and needed specialized orthopedic care which she thought he could best receive in Wisconsin.

It was during this period, when the mother had the two little girls living with her and Sears down south that the trial court granted a divorce to the father and awarded custody of all the children to him. This action by the trial court came at a time when the father had legal custody of the three children by virtue of the order of the family court commissioner, but the mother, who was not in the state, had physical custody of the two little girls. The mother did not personally appear at the divorce hearing but her Wisconsin counsel did.

The record does not reveal that any testimony was given or inquiry made into the best interests of the children regarding their custody. Nor does the record reveal that the court was aware that the mother had the two little girls with her out of state. However, the trial court did at this time make a finding that the father was a fit and proper person to have custody of the children, but it is clear that the court relied primarily on the stipulation.

Thereafter, when the mother returned to Wisconsin she petitioned the court to grant her legal custody of all three children. At the time of the hearing on this petition the daughters were living with the mother and had been for the past year and the little boy was living with his paternal grandparents.

---

[7] *Dodge v. Dodge* (1955), 268 Wis. 441, 67 N. W. 2d 878.

The trial court recognized that the controlling factor in deciding custody issues is the welfare of the children involved.[8] This court has said "the polestar remains the welfare of the child." [9]

In a contested custody matter, where a judicial determination is to be made of what is in the best interests of the children at the initial hearing or at a later hearing where the first full-scale inquiry is made on the issue, each party has a burden to establish what is in the best interests of the child or children. As each contends for the custody of the children, it is his burden to show that the best interests of the children call for placement with him, if that is his desire. And we have stated that in hearings as to custody, in addition to the contentions and presentations of the parties, "the trial court has the responsibility to determine what disposition and what conditions will best serve the interests of the children involved." [10]

As further stated by this court in *Kritzik v. Kritzik*: [11]

". . . It is his task to determine what provisions and terms would best guarantee an opportunity for the children involved to grow to mature and responsible citizens, regardless of the desires of the respective parties. This power, vested in the family court, reflects a recognition that children involved in a divorce are always disadvantaged parties and that the law must take affirmative steps to protect their welfare." [12]

Although here the trial court recognized the "best-interests-of-the-children test" he incorrectly concluded that

[8] *Koslowsky v. Koslowsky, supra,* footnote 2; *Wendland v. Wendland, supra,* footnote 6; *Seelandt v. Seelandt* (1964), 24 Wis. 2d 73, 128 N. W. 2d 66; *Greenlee v. Greenlee* (1964), 23 Wis. 2d 669, 127 N. W. 2d 737. *See Graichen v. Graichen* (1963), 20 Wis. 2d 200, 209, 121 N. W. 2d 737.

[9] *Welker v. Welker* (1964), 24 Wis. 2d 570, 578, 129 N. W. 2d 134.

[10] *Dees v. Dees* (1969), 41 Wis. 2d 435, 442, 164 N. W. 2d 282.

[11] (1963), 21 Wis. 2d 442, 124 N. W. 2d 581.

[12] *Id.* at page 448.

although there had been no prior hearing as to the best interests of the children, the wife had the burden of showing a change since the entry of the actual divorce decree. That burden arises with each subsequent petition once the court has made a full inquiry into and determination concerning what is in the best interests of the child or children involved.

We make two other observations. Although this court has commended the use by trial courts of reports made by qualified child welfare personnel,[13] to be of value in determining custody questions, such reports must be up to date and complete. In the instant case the report was obviously incomplete in that the social worker did not even show any interview with the defendant husband. If these reports are to be helpful they should be complete and the social worker or other person responsible for the report should be available for cross-examination. Such reports, although helpful, are to be given such weight as, in the exercise of its discretion, the trial court deems to give them.[14]

Since there has been no adequate inquiry into what is in the best interests of the children we must remand for further proceedings. In this connection we direct the trial court to appoint a guardian *ad litem* to represent and speak for the best interests of the three children at the new hearing. This is a procedure which we have heretofore recommended on at least three separate occasions.[15]

We deem the appointment of a guardian *ad litem* especially appropriate in a case such as this where the parties may not fully present the factors which will best serve

[13] *Larson v. Larson* (1966), 30 Wis. 2d 291, 302, 140 N. W. 2d 230; *Wendland v. Wendland, supra,* footnote 6. *See also Kritzik v. Kritzik, supra,* footnote 11; *Wunsch v. Wunsch* (1945), 248 Wis. 29, 20 N. W. 2d 545.

[14] *Larson v. Larson, supra,* footnote 13, at page 300.

[15] *Wendland v. Wendland, supra,* footnote 6; *Koslowsky v. Koslowsky, supra,* footnote 2; *Dees v. Dees, supra,* footnote 10.

the children's present and future well-being. The costs involved in connection with the appointment of the guardian *ad litem* should be charged to the parents in such equitable division as the trial court shall determine.[16]

At oral argument the defendant's counsel asserted that all three children are presently residing at or near Hartford with the father and his parents. The plaintiff's counsel asserted that the plaintiff's marriage to Sears had been annulled and that she had established her residence at Richland Center.

On remand the trial court should consider the custody question in terms of the present circumstances.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.

