SCHIPPER, Respondent, v. SCHIPPER, Appellant.

*No. 62.   Argued February 2, 1970.—Decided March 6, 1970.*
(Also reported in 174 N. W. 2d 474.)

For the appellant there were briefs by *Ruppa & Wegner* of Milwaukee, and oral argument by *Nathan Ruppa*.

For the respondent there was a brief by *Kenney, Korf & Pfeil* of East Troy, and oral argument by *Francis J. Korf*.

HANLEY, J. Three issues are presented on this appeal:

(1) Was the evidence sufficient to support the trial court's finding of cruel and inhuman treatment;

(2) Was it an abuse of the trial court's discretion to award plaintiff custody of the minor children; and

(3) Was it an abuse of the trial court's discretion to allow plaintiff a total of $7,400 for attorney's services rendered her in the action?

*Cruel and inhuman treatment.*

It was the finding of the trial court:

"That for the past six years the defendant showed little, if any, attention to the plaintiff and to the children, that he was obsessed with his job at Sta-Rite and talked constantly on this subject at the dinner table, that he constantly belittled and ridiculed the plaintiff in front of her family and friends and told her she was mentally unsound and in need of psychiatric treatment, that he showed her no love or affection for at least the past two years, that he accused her of spending too much money and on one occasion knocked her off her feet in the basement of their home, that as a result of this conduct on the part of the defendant the atmosphere within the home was explosive and tense and arguments were numerous and that by reason thereof the plaintiff's health suffered and impaired the mental and physical health of the plaintiff to such an extent that the marriage state became intolerable and that such conduct upon the part of the defendant constituted cruel and inhuman treatment toward the plaintiff."

It is the defendant's position that each of these findings is contrary to the great weight and clear preponderance of the evidence. In attacking many of these findings the defendant indicates that he specifically denied the plaintiff's underlying allegations. Such denials, however, are insufficient to establish that the findings were against the great weight and clear preponderance of the evidence. The trial court's decision stated:

". . . The testimony offered by each of the parties to support their respective cause of action standing separately, and without considering the denials of the opposing party, would be legally sufficient in the opinion of the court to sustain a decree of absolute divorce to that party. The issue then at this point is primarily one of credibility. The principal contentions of both parties as to the conduct of the opposite party either stand as the truth, in which event the doctrine of recrimination must be considered, or one must fall as not being credible and a decree granted to the opposite party.

"After thoroughly reviewing all of the testimony offered by each of the parties on the issue presented, and having observed and considered the demeanor of each of the witnesses while on the witness stand and while in the courtroom during the trial, the court finds the testimony of the plaintiff as to the treatment suffered by her at the hands of the defendant is true and that the totality of such conduct is of the type which impairs or is calculated to impair the mental and physical health of the plaintiff and would destroy the foundation of the marriage and make the marriage state intolerable. The court finds the plaintiff has established on the record grounds for absolute divorce from the defendant and that the defendant's conduct was cruel and inhuman.

"The court further finds the defendant has failed to establish grounds sufficient to entitle him to a decree of absolute divorce and his counterclaim is therefore dismissed and a decree of absolute divorce will be awarded plaintiff on her complaint."

Quite obviously, the trial court believed the plaintiff's testimony and not that of the defendant. As stated in *Mason v. Mason* (1969), 44 Wis. 2d 362, 368, 171 N. W. 2d 364:

" 'The weight of the evidence and the credibility thereof were matters entirely within the province of the court as the trier of the facts.' *Gordon v. Gordon* (1955), 270 Wis. 332, 340, 71 N. W. 2d 386."

This court, not having had the opportunity to observe the demeanor of either the defendant or the plaintiff, must give credence to the testimony of the plaintiff.

Thus, as to the court's finding that he "was obsessed with his job at Sta-Rite and talked constantly on this subject," this court need not accept the defendant's denial as a verity. Likewise, the plaintiff's admission that she had on occasion inquired as to the defendant's work does not render her testimony, which was corroborated by Janet Schipper, untrustworthy, or render the trial court's finding against the great weight and clear preponderance of the evidence.

As to the finding that the defendant "for the past six years showed little if any attention to her [the plaintiff] and the children," the defendant's citation of various family activities, such as swimming, ice skating, picnics and trips, which were partially refuted by testimony of Janet Schipper, does not require a ruling that it was against the great weight and clear preponderance of the evidence. The term "little if any" over a six-year term is relevant; and assuming *arguendo* the veracity of testimony favorable to the defendant, the trial court was justified in its finding.

In reference to the court's finding that "he constantly belittled and ridiculed her [the plaintiff]," the defendant quotes as follows from the plaintiff's testimony: "You can't put your finger on people's way of belittling you," and apparently argues that the plaintiff was unable to give specific examples of such conduct on his part. However, the plaintiff also testified:

". . . For instance, in front of my mother, he would say, 'she spends too much money. I save the money I have but she goes out and spends it.' He has said with the driving of the car—I wasn't permitted to drive his car. It was too big. I would bump it. He bought me a little car. It was just everything I did. I wasn't capable of doing anything."

Suffice it to say that plaintiff's inability to be more specific does not render her testimony untrustworthy. Although the defendant also argues that the plaintiff's testimony as to this finding was uncorroborated by anyone other than Janet—her "mentally disturbed" daughter—this court need not delve into Janet's credibility. The trial court no doubt considered Janet's mental condition and either determined that she was not "mentally disturbed" or that any such disturbance did not affect her credibility.

In attacking the court's finding that the defendant told plaintiff that "she was mentally unsound and in need of psychiatric treatment," the defendant argues that his statements were in fact true. While truth is a defense

in actions of defamation, it does not bestow upon one a license to spread such accusations and thereby preclude a finding that such conduct constituted cruel and inhuman treatment.

The finding that the defendant "showed her no love or affection for at least the past two years" is supported by plaintiff's testimony that they had not had sexual relations for a period of two years and had not occupied the same bed during that time. In addition, there was testimony indicating that they sometimes went for weeks without talking to one another. Neither the fact that they took several trips during this time nor Dr. Laszlo Varga's testimony indicating defendant's concern for his marriage require this court to upset this finding.

As to the findings that the defendant had "accused her [the plaintiff] of spending too much money" and had "on one occasion knocked her off her feet," defendant directs the court's attention to his testimony denying these incidents. However, as previously noted, such denial testimony does not constitute a showing that the court's finding was against the great weight of the evidence.

As stated in *Gordon v. Gordon* (1955), 270 Wis. 332, 339, 71 N. W. 2d 386:

"There is no yardstick definition for cruel and inhuman treatment. Each case depends for construction on its own peculiar circumstances. . . ."

We think that in the instant case the totality of the defendant's conduct justified the court's determination that such conduct constituted cruel and inhuman treatment.

However, the defendant also contends, relying on sec. 247.18 (2), Stats., that the plaintiff has failed to corroborate both the conduct constituting grounds [1] for

---

[1] "247.18 **Corroboration required; defaults.** (1) . . .

"(2) No judgment of annulment, divorce or legal separation shall be granted on the testimony of the party, unless the grounds therefor and required residence are corroborated by evidence other than the testimony of the parties, except the ground of cruel and inhuman treatment when no corroborating evidence is available.

the divorce and its effect [2] upon her health. In regard to the plaintiff's alleged ground of cruel and inhuman treatment, it need only be noted that where corroboration was available it was furnished by testimony of Janet Schipper. As to corroboration of the plaintiff's allegation that defendant's conduct had a detrimental effect upon her health, the transcript reveals the following testimony of Dr. Calvin O. Chicks:

"*Q.* Do you think it was the problems of her present situation since this divorce was commenced which contributed to her emotional instability?

"*A. I think the situation leading up to the break in their relationship probably did.* The situations subsequent to the break, commencement of the divorce action, did also for a while, but I feel that she has mastered that. I don't see this as being currently upsetting to her at the present time.

"*Q.* And between your first visit with her and your last visit with her, did you notice any change in the emotional instability you observed?

"*A.* Yes, I did.

"*Q.* And what was that change?

"*A.* Well, there was some turn-down on this. She became more relaxed, and I would say more confident." (Emphasis supplied.)

We think the plaintiff's testimony was sufficiently corroborated.

---

No stipulation by the parties shall satisfy the requirements of this subsection."

[2] In *Jacobs v. Jacobs* (1969), 42 Wis. 2d 507, 511, 512, 167 N. W. 2d 238, this court stated:

". . . When there is no corroboration of proof which is necessary for a divorce, there should be a showing that such corroboration was not available. It would appear that sec. 247.18 (2), Stats., requires corroboration not only of the cruel and inhuman conduct, but also of the fact that the conduct has a grave detrimental effect upon the physical or mental health of the offended spouse."

*Custody of the minor children.*

In *Koslowsky v. Koslowsky* (1969), 41 Wis. 2d 275, 280, 163 N. W. 2d 632, this court reiterated its often repeated pronouncement that:

" 'The trial court has wide discretion in determining custody matters, and its decision will not be upset unless there is evidence of a clear abuse of discretion. *Wendland v. Wendland* (1965), 29 Wis. (2d) 145, 138 N. W. (2d) 185; *Belisle v. Belisle* (1965), 27 Wis. (2d) 317, 321, 134 N. W. (2d) 491.' *Farwell v. Farwell* (1967), 33 Wis. 2d 324, 327, 147 N. W. 2d 289.

" 'This court strongly defers to the trial court's findings in custody matters. The reason for this is, of course, the uniqueness of the situation involved in each custody award and the broad understanding of the particular problem which the trial court can achieve in the course of the hearing, which can never quite be duplicated by an appellate court upon a review of the record. . . .' "

In the instant case the trial judge had ample opportunity to consider both the custody and underlying welfare of the minor children. The question of custody was considered not only at the trial but also at two subsequent hearings.

At the conclusion of the defendant's motion to review, the court reaffirmed its initial decision and stated:

". . . 'The court has had the benefit of psychiatric findings and opinions on the issue of custody, together with a home-study report submitted by the Walworth County Department of Social Services, and the testimony of close neighbors and friends of the parties.' In addition, I also had the benefit of the written report of Dr. Bacon which is a part of this record as plaintiff's exhibit five; the written report, which is also part of this record, of Dr. Chicks, which is defendant's exhibit two; also the oral testimony of Dr. Chicks, and the oral testimony of Dr. Varga; the testimony of the five close neighbors who gave their respective opinions as to whether or not Mrs. Schipper is a fit person to have the custody of the children; the home-study report of the Walworth County

Department of Social Services, and other witnesses that testified at the trial, plus the benefit of talking to the two younger girls, Nancy and Debra, a week or so after the close of this trial."

After appointing a guardian *ad litem* the court again examined the custody question and considered the guardian's report which recommended that plaintiff be allowed to retain custody of the minor children.

Counsel for defendant contends that there was an improper use of the report of the guardian *ad litem*. We do not agree with this contention since the parties stipulated to the admission of the report into evidence.

As to the trial court's refusal to accept into evidence the report of Dr. Varga, such could not possibly have been prejudicial to the defendant. Dr. Varga was allowed to testify on the basis of a hypothetical question which embraced all factors relevant to his conclusion concerning the plaintiff's mental health. In addition, the judge allowed Dr. Varga, bearing in mind his previous hypothetical testimony, to testify as follows: "My opinion is that Mrs. Schipper is the most unfit and harmful person to raise children." Dr. Varga's testimony was considered and rejected. Apparently the court placed more credence in the reports such as those of Dr. Bacon, which stated:

". . . On the basis of [my] interview, I would be forced to say, that this woman is competent and capable of the care and custody of her children."

and of Dr. Chicks, which stated:

". . . Mrs. Schipper has some neurotic problems and certainly is not a perfect mother but her problems are not of the nature or degree that would render her unfit to have custody of her children. . . ."

While the defendant may have succeeded in casting doubt upon the plaintiff's mental state, such doubt was resolved by the trial court. No abuse of discretion has been shown in the trial court's resolution of this matter.

*Attorney's fees.*

The allowance of attorney's fees in divorce actions is discretionary with the trial court. *Spheeris v. Spheeris* (1967), 37 Wis. 2d 497, 155 N. W. 2d 130; *Wahl v. Wahl* (1968), 39 Wis. 2d 510, 159 N. W. 2d 651. However "the husband cannot be compelled to pay the entire amount of either attorney's fees or disbursements." *Johnson v. Johnson* (1969), 42 Wis. 2d 237, 244, 166 N. W. 2d 230.

In the instant case the defendant was ordered to pay, on behalf of the plaintiff, $5,000 as attorney's fees for the trial of this action and $230 for related disbursements. In addition, he was later, by order dated June 27, 1967, required to pay $1,760 as the anticipated cost of the plaintiff's representation on appeal of this matter. Finally, in an order dated July 29, 1969, the defendant was ordered to pay $410 in connection with the motion to modify the judgment.

When the $5,000 amount was initially set, the trial judge stated:

"Attorney for plaintiff requests as a contribution toward his attorney's fees the sum of Five thousand dollars, plus disbursements in the sum of $230. Considering the entire record of this case, the many pre-trial proceedings and conferences, and the trial itself, the court considers the sum requested as being fair and reasonable. . . ."

In addition, before affirming its order requiring payment of this amount, the trial judge noted:

"With regard to the issue of attorney's fees, I am well acquainted with this file and acquainted with the amount of work that went into it, not only on the part of Mr. Korf, but on the part of Mr. Ruppa, and the attorneys who represented Mr. Schipper prior to that. In setting the fees as a contribution for attorney's fees that I did, I considered the work that was performed by Mr. Korf.

I drew on my experience, not only as a trial judge, but as an attorney, and I considered the cases that have been handed down by our supreme court with regard to setting contribution for attorney's fees for the wife's attorney. Mr. Korf has filed an affidavit that I have read, which will become a part of this record. I feel that the amount of contribution that I set for the attorney's fees for Mr. Korf is fair and reasonable under the circumstances of this case. I felt that at the time I set them, and I feel the same at this time."

Thus, it is apparent that the judge did not erroneously order the defendant to pay the "entire amount" of the plaintiff's attorney's fees. As to the $230 of disbursements, however, Attorney Korf's "Statement of Services Rendered" indicates that such amount constituted the total amount thereof. Likewise, Attorney Korf's petition, dated June 14, 1969, and his affidavit, dated June 27, 1969, indicate on their face that the $1,760 allowed for appeal to this court and the $410 allowed in connection with the motion to modify the judgment represent the "entire" charge concerning these matters. The orders for fees specifically refer to plaintiff's attorney's fees and neglect to specify the payment as a contribution.

We conclude the defendant should only be required to pay a reasonable sum as a contribution toward the amounts expended for disbursements, appeal fees and motion expenses.

Therefore, the judgment as to disbursements is ordered modified to provide payment of $100 as a contribution toward disbursements; the order on appeal fees is modified to provide a contribution payment of $900; and the order on review of judgment is modified to provide a contribution payment of $200.

*By the Court.*—Judgment and orders are modified and, as modified, affirmed. No costs are to be taxed in this court.

ROBERT W. HANSEN, J. (*concurring*). The writer concurs in the reasoning and result reached in the court's

opinion in this case. However, there is one puzzling incident during the taking of testimony as to custody placement of the three minor children that warrants special attention and requires special comment.

In this state a family court judge always has the right, often has the duty, to take affirmative steps to determine and protect the rights of minor children who are concerned and affected parties in divorce or separation actions involving their parents.[1]

Such affirmative steps include the right of the family court judge to appoint a family service agency or social service investigator to investigate, evaluate alternatives and recommend to the court the custody placement most likely to serve the best interests of the minor children involved.[2]

Such affirmative steps also include the right to appoint an attorney as guardian *ad litem* for the minor children to serve as the legal representative or advocate for the children's rights and interests at the time of hearing or trial.[3]

Here the trial court properly and prudently appointed such guardian *ad litem* to protect the rights and represent the interest of the three minor children of the divorcing parties. In appointing such guardian *ad litem* for the children, the trial court set forth the purpose to be served and the responsibility of the attorney appointed as guardian in these words: ". . . to represent and act for and protect the interests of the three minor children of the parties hereto *and to appear and represent said children at the hearing scheduled herein."* (Emphasis supplied.)

[1] *Kritzik v. Kritzik* (1963), 21 Wis. 2d 442, 124 N. W. 2d 581; *Wendland v. Wendland* (1965), 29 Wis. 2d 145, 138 N. W. 2d 185; *Dees v. Dees* (1969), 41 Wis. 2d 435, 164 N. W. 2d 282.

[2] *Kritzik v. Kritzik, supra; Dees v. Dees, supra.*

[3] *Koslowsky v. Koslowsky* (1969), 41 Wis. 2d 275, 283, 163 N. W. 2d 632; *Dees v. Dees, supra; Johnson v. Johnson* (1969), 42 Wis. 2d 237, 245, 166 N. W. 2d 230; *Lacey v. Lacey* (1970), 45 Wis. 2d 378, 173 N. W. 2d 142.

What is puzzling in this record is that it appears that the attorney appointed as guardian *ad litem* submitted a written report or memorandum of his findings and conclusions. Counsel for the wife and husband stipulated and agreed that such written statement be accepted by the trial court and made part of the record in this case.

If, as is not the case here, such written "report" by the guardian *ad litem* would be in lieu of his actual presence at and full participation in the hearing, it falls short of providing adequate legal representation of the rights and interests of the children. An attorney appointed to represent a minor in delinquency proceedings in a juvenile court accepts a responsibility not discharged by his filing a written statement or report to the court. A juvenile offender given no more than that would not be accorded effective assistance of competent counsel. Where there is reason to appoint a guardian *ad litem* for the children in a family court case, there is reason to insist upon both presence and participation of appointed counsel in the hearing directly affecting the present and future well-being of such children.

If, as was the case here, the written "report" of the guardian *ad litem* for the children was submitted in addition to actual presence and full participation of the guardian in the custody hearing, there remains reason to flash, not a STOP sign, but a CAUTION signal. The role of a court-appointed attorney or guardian *ad litem* is that of advocate. He has the right to produce witnesses, cross-examine witnesses, and argue to the court. The role of the court-appointed social agency or investigator is that of a qualified expert in the field of child custody placements. He is expected to investigate, evaluate, recommend and report. His report or recommendations must be made available to the litigants or their counsel [4] but comes within the expert witness exception to the hearsay

---

[4] *Larson v. Larson* (1966), 30 Wis. 2d 291, 140 N. W. 2d 230.

rule, analogous to testimony by a psychiatrist as to sanity or an appraiser as to real estate values. The appointment of an attorney as guardian *ad litem* for the children in a divorce case does not qualify him ipso facto as an expert in the child custody field, so the hearsay exclusion rule does apply to a report including or based upon statements made to him by others.

The writer concurs with the court's holding that where, as here, the attorneys for the wife and husband stipulated and agreed that a written report by the guardian *ad litem* for the children be accepted and made part of the report, neither has the standing to challenge on appeal the court's doing what both asked the court to do. Nonetheless it is important that the distinction between the report of a social investigator and the participation of a guardian *ad litem* in a trial neither be blurred nor ignored.