FRITSCHLER, Appellant, v. FRITSCHLER, Respondent.

*No. 24. Submitted under sec. (Rule) 251.54 June 7, 1973.—Decided June 29, 1973.*
(Also reported in 208 N. W. 2d 336.)

For the appellant the cause was submitted on the brief of *Podell, Hodan & Podell* and *James J. Podell,* all of Milwaukee.

For the respondent the cause was submitted on the brief of *Oldenburg & Lent* and *Richard E. Lent,* all of Madison.

HALLOWS, C. J.   The main issue on appeal is whether the lower court abused its discretion in not allowing Mrs. Fritschler to have custody of the children except in Wisconsin. It is claimed the trial court disregarded the recommendations of three family specialists who had recommended in effect that Mrs. Fritschler should have custody of the children in Colorado. Mrs. Bettylu Anderson, a family-court counselor for Dane county, testified concerning her report which was received in evidence. In this report she recommended that custody of the children remain with their mother and stated that if living in Colorado were in their mother's best interests it would also be in the children's best interests to live there. A letter from Mr. Sol Miran, court marriage counsel for the Arapahoe county district court in Colorado, was admitted in evidence. This letter in effect stated that Mrs. Fritschler was a well-balanced person with a strong need to be independent and that the children were not suffering from her decision to live in Colorado. Also admitted in evidence was the report of Howard Mausner, a certified consulting clinical psychologist for the state of Colorado, who found Mrs. Fritschler to be an intelligent woman, capable of raising her children and of making decisions. He thought a change in custody of the children would be detrimental to their mental health and future. The trial court considered this evidence and commented thereon to the effect that it was not very helpful to a determination of the issue presented.

This court has held social workers' reports are not binding upon a trial court which may determine the weight to be given to the reports of social workers. *Larson v. Larson* (1966), 30 Wis. 2d 291, 300, 140 N. W. 2d 230; *Gochenaur v. Gochenaur* (1969), 45 Wis. 2d 8, 19, 172 N. W. 2d 6. It has recommended the use of social workers as a helpful tool in determining the best interests of the child. *Weichman v. Weichman* (1971), 50 Wis. 2d 731, 184 N. W. 2d 882; *Wendland v. Wendland* (1965), 29 Wis. 2d 145, 138 N. W. 2d 185; *Dees v. Dees* (1969), 41 Wis. 2d 435, 164 N. W. 2d 282. But neither the use of such witnesses nor the acceptance of their recommendations is mandatory. If it were, the social workers would be performing the function of a judge on the bench rather than that of a witness. While the court may have misquoted one of the reports in a minor respect, we can find no abuse of discretion in its failure to accept or give more weight to the social workers' reports and testimony. Mrs. Fritschler's reasons for moving to Colorado were considered insufficient by the trial court. Reasons cited for her move were to escape from social embarrassment resulting from her husband's reputation as a criminal law attorney, to take advantage of what she considered to be better job opportunities in the area of real estate sales and better recreational facilities for the children, to help relieve her arthritis and sinus problems, and lastly, to make it on her own in new surroundings without any help or hindrance from her former husband.

Whether a divorced parent who has custody of minor children should be allowed to remove them from the state depends upon what is in the best interests of the children. Mrs. Fritschler argues that what is best for the parent who has custody is, indirectly at least, for the best interests of the child. Mrs. Fritschler argues

for the proposition a divorced parent having custody should be able to take the children permanently to another state if it is not against their best interests. She relies on *Whitman v. Whitman* (1965), 28 Wis. 2d 50, 135 N. W. 2d 835, and *Peterson v. Peterson* (1961), 13 Wis. 2d 26, 108 N. W. 2d 126. In *Peterson,* we pointed out the majority of cases on this point support the rule that if a parent who has custody of a child has good reason for living in another state, the courts will permit the removal providing such course of conduct is consistent with the best interests of the child. The emphasis is not on the good reason of the parent who has custody but on the best interests of the child, which should be furthered. In *Peterson* we pointed out the same considerations which determine custody of children are applied to the question of removal of children out of the state, *i.e.,* the controlling consideration is the welfare of the child. This view was followed in *Whitman,* relied on by Mrs. Fritschler. Language in that case to the effect that removal for a proper purpose and beneficial to the parent may be sanctioned if not detrimental to the children must be read with the more explicit language of that case, *i.e.*:

"A divorced man or woman is free to move about and pursue his or her life and living without restraint from his former spouse; as divorced parents of minor children they may be required to curtail these liberties or forfeit some of their rights to custody or visitation, as the case may be, consistent with the best interests of the children and the rights of the other parent." 28 Wis. 2d at p. 58.

Thus one having custody of a child is not free to move about the country disregarding state lines, as that person would be if she did not have custody. The parent's responsibility to the child and its interests and the rights of the other parent qualify and limit the right

and liberty to move about freely—that is one of the burdens of having custody of minor children.

In the present case, the trial court thought the children's best interests would be harmed by their removal from Wisconsin and the resulting separation from frequent contacts and a closer relationship with their father. While Mrs. Fritschler considered herself subject to social embarrassment because of her husband's reputation as a criminal law attorney, the trial court took the view that Mr. Fritschler had a good reputation and the children should not be denied identification with their father by being removed outside the state where the father was not known. There was apparently no question in the trial court's mind that Mr. Fritschler could afford to exercise his visitation rights by going to Colorado; nor was the court unaware of the possibility that the father could have custody of the children for several months during the summer if Mrs. Fritschler were permitted to exercise custody outside the state. Such alternatives were believed not to be in the children's best interests. Living in Colorado is not as conducive to a normal relationship between a father and his children, from the children's standpoint, as living in the same city. While a divorce terminates a marriage, it does not terminate parenthood and should not in effect do so.

While in *Bennett v. Bennett* (1938), 228 Wis. 401, 280 N. W. 363, a father was permitted to remove minor children to New York where he had an opportunity for employment at a larger salary with prospects for advancement, this was on the rationale that what was better for the father, who was under a duty to provide support, indirectly benefited the children. In the present case the trial court could find no such benefits from the reasons given by Mrs. Fritschler for moving to Colorado. We are inclined to agree with the trial court.

Emphasizing that the interests of the children are paramount, this court in *Anderson v. Anderson* (1959), 8 Wis. 2d 133, 98 N. W. 2d 434, upheld the lower court's order requiring the children to be returned to this country from Acapulco, Mexico, because of the better educational facilities here and because it would enable them to see and associate with their father. In every case involving custody, the best interests of the children must be considered the primary test and all other reasons for removal must bear a promoting or at least a consistent relationship to those interests. *Larson v. Larson, supra; King v. King* (1966), 29 Wis. 2d 586, 139 N. W. 2d 635; *Dodge v. Dodge* (1955), 268 Wis. 441, 67 N. W. 2d 878. In the instant case, the trial court found the best interests of the children would be served by their remaining in Wisconsin, and we agree.

It is also claimed the trial court erred in not accepting the family-court counselor's supplementary report at the hearing on February 2, 1973, at which Mrs. Fritschler was not present. Mrs. Anderson's report, which supplemented her previous report admitted at the December 20th hearing, did not substantially differ from, but only more exhaustively presented, the material contained in the original report. The hearing on February 2d was on a petition for review. This is a reconsideration of matters already in the record. No notice had been given to the plaintiff that any new evidence was to be offered. Some of the material in the proferred report was hearsay and allowed Mrs. Fritschler to testify although she failed to appear personally in court on her own motion. We find no error in the court's refusing to admit the supplementary report.

In the second order of December 29th the trial court ordered the suspension of all payments under the divorce judgment and transferred custody to Mr. Fritschler. Suspended by this order were both payments of support

for the children and a balance of one third of $15,000, which was due Mrs. Fritschler under the judgment. This court recently held in *Krause v. Krause* (1973), 58 Wis. 2d 499, 206 N. W. 2d 589, that support payments for a child should not be suspended because of a breach of a court order by the parent having custody. The father owes support to his child even though he is denied visitation rights or the mother is in contempt for removing the child from the state. *See Block v. Block* (1961), 15 Wis. 2d 291, 297, 112 N. W. 2d 923; 2 Nelson, *Divorce and Annulment* (2d ed., 1961 rev.), p. 274, sec. 15.26. The best interests of the child require that he be supported and the sins of his parents not be vested upon him in the form of punishment by lack of support. We think the trial court's order suspending the support of the children is erroneous and must be reversed. However, we consider the $5,000 payment due Mrs. Fritschler to be alimony under the decree and subject to modification or suspension. The divorce judgment refers to the $15,000 payment as "alimony and a full, final and complete division of the estate." Standing alone, this language is ambiguous, but the judgment also provides that in the event of remarriage of the plaintiff any remaining unpaid balance of the $15,000 would be canceled. Generally, this court considers a lump sum of money, whether paid at one time or in instalments, to be part of a property settlement. Such provision is prima facie a property settlement. Here, the added factor is the provision that in the event Mrs. Fritschler remarried, the payment would be canceled. This is a characteristic of alimony, not of a property settlement. We think it was proper for the court to withhold the payment of this instalment until Mrs. Fritschler complied with the order of the court to bring the children back to Wisconsin.

*By the Court.*—The order granting custody to the respondent John C. Fritschler, Jr., is affirmed; the order relieving him of the payment of $5,000 until the appellant Judith J. Fritschler complies with the order of the court is affirmed; that part of the order relieving the respondent of·support of his children is reversed; the order denying a stay pending appeal is affirmed.

ROBERT W. HANSEN, J. *(dissenting).* The trial court found that the best interests of the children would be served by transfer of custody from their mother, now living in Colorado, to their father, still living in Wisconsin. Such trial court determination, as the majority states, is not to be upset in the absence of a clear abuse of discretion. However, only proper and relevant factors are to be considered in determining what custody placement order would best serve the welfare and well-being of the children involved. The financial income, the professional status and the community standing of the two ex-spouses are not such proper factors. Here the trial court obviously gave heavy weight to such income, such status and such standing. In its memorandum opinion, the trial court stated:

". . . children should be able to enjoy and bask in the delights of their father's reputation as a competent and leading attorney of the City of Madison and the State of Wisconsin. . . . Fortunately in this matter, Mr. Fritschler has a good reputation and there is no reason that the Court sees, why that reputation should not continue, and the Court is of the opinion that there is no reason why those two (2) children should not become a part of that reputation . . . ."

Earlier in the same opinion, the trial court added to status and standing as an attorney, the matter of the substantial income earned in his profession by the father, stating:

"The Defendant is a very successful attorney—is well respected in the community as evidenced by his substantial income over a long period of time. . . ."

Wherever the father is a successful attorney and the mother is a full-time homemaker, giving weight to these considerations puts a butcher's thumb on the scales. Of course, the barrister father will have a greater income, professional status and standing in the community than the mother who stayed home to raise the children. By such scales, so weighted, an F. Lee Bailey or Melvin Belli would be assured custody of children should lawyer-husband and homemaker-wife go separate ways. The best interests of a child are not to be determined by a comparison of income tax returns or resort to a Martindale directory. Success, status or standing in any one of what in Italy are termed the *le grande* professions does not make one a preferred custodian of minor children. One's law school diploma and license to practice law, or the financial success or community prestige one attains in this profession are not relevant or proper foundation stones for a change of custody order.

So the writer would reverse and remand for a new hearing to consider the alternatives as to custody placement of the two children.

I am authorized to state that Mr. Justice HORACE W. WILKIE joins in this dissent.