WEICHMAN, Appellant, v. WEICHMAN, Respondent.

*No. 374. Argued March 5, 1971.—Decided March 30, 1971.*
(Also reported in 184 N. W. 2d 882.)

732

For the appellant there was a brief by *D'Amato & Cusack* of Waukesha, and oral argument by *James D'Amato*.

For the respondent there was a brief by *Michael, Best & Friedrich,* and oral argument by *Lee J. Geronime,* all of Milwaukee.

HALLOWS, C. J.   At the outset we will overlook as not relevant the questions relating to inconsistent judgments and orders and the question of the plaintiff's contempt in not allowing the paternal grandparents to visit the child.   On oral argument the paternal grandparents waived any right to have the plaintiff held in contempt and the issues were narrowed to whether the court abused its discretion in granting visitation rights to the paternal grandparents.

There is no statutory or common-law rule which forbids a court in a divorce action from granting visitation rights to parents or to others.   The question is not one of the power of the court but of judgment or of judicial discretion.   The underlying principle or guideline for the granting of visitation privileges, as it is for granting custody, is what is for the best interest and welfare of the child.   *See Gotz v. Gotz* (1957), 274 Wis. 472, 80 N. W. 2d 359.

The court's power to control visitation rights flows from sec. 247.24, Stats.,[1] and is intertwined with its

[1] "247.24 **Judgment; care and custody, etc., of minor children.** In rendering a judgment of annulment, divorce or legal separation, the court may make such further provisions therein as it deems just and reasonable concerning the care, custody, maintenance and education of the minor children of the parties, and give the care and custody of the children of such marriage to one of the parties to the action, or may, if the interest of any such child demands it, and if the court finds either that the parents are unable to adequately care for any such child or are not fit and proper persons to have the care and custody thereof, may declare such child a dependent and give the care and custody of such child to a relative (as defined in ch. 48) of the child, a county agency specified in s. 48.56 (1), a licensed child welfare agency, or the department of health and social services. The charges for such care shall be pursuant to the procedure under s. 48.27. Whenever the welfare of any such child will be promoted thereby, the court granting such judgment shall always have the power to change the care and custody of any such child, either by giving it to or taking it from such parent, relative or agency, provided that no order changing

power to grant custody in divorce actions. In instances where neither parent is able to adequately care for the child or both are unfit, custody of the child may be given to a relative if the interest of the child demands it. However, visitation rights are not dependent upon the fitness or unfitness of the parents but upon whether the welfare of the child requires it to see and visit members of the family to which it belongs. Other jurisdictions have granted visitation rights to relatives, not for their gratification or enjoyment, but to fulfill the needs of the child. *See: Benner v. Benner* (1952), 113 Cal. App. 2d 531, 248 Pac. 2d 425; *Kewish v. Brothers* (1966), 279 Ala. 86, 181 So. 2d 900; *Lucchesi v. Lucchesi* (1947), 330 Ill. App. 506, 71 N. E. 2d 920.

In *Gotz v. Gotz, supra,* visitation rights were given to the sisters of the divorced mother who went to Florida for health reasons. The father was given temporary custody of the child with the provision the maternal relatives had the right to visit the child weekly. Later the father objected that these visitations were detrimental to the child, but the court found on psychiatric testimony that the detrimental effect on the child was caused by the father's resentment of visits which grew out of his hostility toward his wife's sisters. Based upon the premise "It is generally a good thing for the child of divorced parents to maintain contact with both his father and mother," this court recognized it was within the judicial discretion of the trial court to keep that contact alive through visits of the child's aunts. It is natural for a child "to belong;" it gives him security in life which he needs in his development. A child should have

the custody of any child shall be entered until after notice of such application has been given the parents of such child, if they can be found, and also to the relative or agency that then has the custody of such child."

family contacts and these should be preserved to him to the fullest extent in divorce cases.

Unfortunately, too many divorced parents "allow the desire to nurture their personal animosities to overshadow the welfare of the child," and frequently there is an overflow of this animosity to other relatives of the child. In this case the record reveals deep animosity and ill-feeling between the young parents and their respective families. The child seems to be more of a football in the game of life than a player. A child has a right to grow up as naturally as he can under the circumstances of a divorce. Those things which will aid him in his normal development as a human being, the court should allow him; those things which will harm his development should be forbidden. It is difficult enough for a child of a broken home to find its way through life without having the added burden of being the victim of hatred and hostility between his parents and relatives. Divorced parents and their kin should remember it is not their wishes or desires which are at stake but the welfare of the child who did not ask to be placed in the tragic circumstances he finds himself.[2]

In *Peterson v. Peterson* (1961), 13 Wis. 2d 26, 30, 108 N. W. 2d 126, we stated, "No hard and fast formula has yet been devised for determining what factors will ultimately assure the future welfare of a child." In that case we allowed a divorced mother to take the child out of the home of the paternal grandparents and move to another state against the vigorous protest of the paternal grandparents. The paternal grandparents were found to be motivated in their course of action by self-gratification, and consequently it was better to separate the child from their constant contact so he could develop better relations with his mother.

---

[2] *See* dissent in *Whitman v. Whitman* (1965), 28 Wis. 2d 50, 62, 135 N. W. 2d 835.

Here, the defendant requested his parents to have visitation rights while he was absent. We point out a parent cannot delegate his visitation rights to others in his absence and even a parent's right of visitation may be denied or restricted if its exercise is detrimental to the child. *See Block v. Block* (1961), 15 Wis. 2d 291, 112 N. W. 2d 923. A parent who abandons or neglects a child may have his parental rights terminated by a proceeding under sec. 48.40, Stats. But, since the rights of a grandparent are not derivative, such action is not controlling on the question of whether in a given case the child may have his grandparents visit him or he visit his grandparents.

In determining the issue in this case, it is not necessary the grandparents or other relatives be formal parties to the divorce suit. The court is not directly concerned with them but only indirectly in reference to what is the best interest of the child who is before the court.

The resolution of visitation rights requires the court to hold an adequate hearing directed to the issue. While in this case there was a hearing on the merits of the divorce, no evidence was taken on the issue of visitation rights. We hold the hearing upon this issue was insufficient. It is true the custody of the child was stipulated, but such a stipulation is not binding upon the court and should not be approved unless the court determines independently that what is stipulated promotes and insures the welfare of the child. Testimony on the stipulation should be taken. *King v. King* (1964), 25 Wis. 2d 550, 555, 131 N. W. 2d 357; (1966), 29 Wis. 2d 586, 139 N. W. 2d 635. Since animosity exists between the grandparents and the plaintiff is living with her parents, we think the issue of visitation by the paternal grandparents should be the subject of a hearing. It may be the same result will be reached, but if so it will be an informed judgment. *See Gochenaur v. Gochenaur* (1969), 45 Wis. 2d

8, 172 N. W. 2d 6. At this hearing we think it would be well if the trial court used the services of a qualified child welfare agency if one is available. The use of such reports was recommended in *Larson v. Larson* (1966), 30 Wis. 2d 291, 140 N. W. 2d 230; *Wendland v. Wendland* (1965), 29 Wis. 2d 145, 138 N. W. 2d 185; *Dees v. Dees* (1969), 41 Wis. 2d 435, 164 N. W. 2d 282. Finally, the trial court should appoint a guardian *ad litem* for the child on this issue. This procedure we have heretofore recommended in *Gochenaur v. Gochenaur, supra,* and the cases therein cited.

*By the Court.*—Order and judgment reversed as to visitation rights and the cause remanded for further proceedings on this issue, consistent with this opinion.