PONSFORD, Respondent, v. CRUTE and wife, Appellants.

*No. 268. Argued October 31, 1972.—Decided November 28, 1972.*
(Also reported in 202 N. W. 2d 5.)

410

For the appellants there was a brief by *O'Melia, Kaye & Melby, S.C.*, and *William A. Melby*, all of Rhinelander, and oral argument by *William A. Melby*.

For the respondent there was a brief and oral argument by *Albert J. Cirilli* of Rhinelander.

BEILFUSS, J. From the record and the arguments before us, we deem the issues to be:

1. In child custody cases does the doctrine of the best interests of the child prevail over the right of a parent to the custody of the child?

2. Was there sufficient credible evidence to support the finding that the father is a fit and proper person to have the care and custody of his minor child?

3. Did the trial court have legal authority to grant visitation rights to the grandparents?

4. Was it an abuse of discretion to order the plaintiff-father to bear the entire cost of the guardian and condition custody upon the payment of this fee?

Counsel for the grandparents contends that in all child custody cases the polestar consideration is the best interests of the child and that the trial court did not recognize the dominance of this rule.[1] In most custody cases the finding as to the best interests of the child determines the issue and in all cases it is a proper consideration. Certainly the best interests of the child is the controlling consideration in a contest for custody between the parents of the child. Here, as is apparent, the dispute is between the natural father and the maternal grandparents.

Aside from the sociological and natural right of a parent to keep his child as against all others, the legislature, in ch. 247, Stats., has set standards that must be applied in divorce, separation and custody cases.[2]

Sec. 247.24, Stats., states:

"**Judgment; care and custody, etc., of minor children.** In rendering a judgment of annulment, divorce or legal separation, the court may make such further provisions therein as it deems just and reasonable concerning the care, custody, maintenance and education of the minor children of the parties, and give the care and custody of the children of such marriage to one of the parties to the action, or may, if the interest of any such child demands it, and if the court finds either that the parents are unable to adequately care for any such child or are not fit and proper persons to have the care and custody thereof,

---

[1] The appellants cite several cases to support this contention. However, they must be distinguished because they all deal with disputes between parents or unfitness of a parent.

[2] *See* sec. 247.05 (4), Stats.

may declare such child a dependent and give the care and custody of such child to a relative (as defined in ch. 48) of the child, a county agency specified in s. 48.56 (1), a licensed child welfare agency, or the department of health and social services. . . ."

We believe the court has answered the contention of the grandparents in *Sommers v. Sommers* (1966), 33 Wis. 2d 22, 26, 146 N. W. 2d 428:

"Sec. 247.24, Stats., gives the court power to give the care and custody of the children to one of the parties to the action. However,

" '. . . if the court finds either that the parents are unable to adequately care for any such child or are not fit and proper persons to have the care and custody thereof, [it] may declare such child a dependent and give the care and custody of such child to a relative . . . a county agency . . . a licensed child welfare agency, or the state department of public welfare.'

"As a consequence, before a trial court can deprive the natural parents of custody, there must be findings supported by the evidence sufficient to show that both natural parents are either unfit or unable to adequately care for the children."

From the statute [3] and this court's construction of it in *Sommers v. Sommers, supra,* as between Dale, the natural father, and the Crutes, the maternal grandparents, Dale cannot be deprived of the custody of his minor child unless there is a finding that either he is unfit or is unable to care for the child. The court affirmatively found that as of the time of the trial in this case Dale was fit to have the child and that he was able to adequately take care of her. Under these findings the trial court was obligated to award the custody of Kim to the father, Dale.

The appellants-grandparents also contend that the evidence is not sufficient to support the finding that Dale was fit.

---

[3] Sec. 247.24, Stats.

At the time that Dale and Linda separated in 1966, and at the time of the habeas corpus hearing in 1968, a finding of unfitness and inability to adequately care for the minor child, in all probability, could be sustained. His association with Sandra was grossly improper, a violation of marriage vows, and a strong indication of his lack of moral responsibility to his child. Further, in 1968 he was in military service with no physical facilities to adequately care for the child.

In 1971, at the time of the hearing in this matter, Dale's pattern of living had changed substantially. He was married to Sandra and living with her in an entirely proper manner. There was nothing about the conduct of Dale and Sandra after their marriage that would require a finding of unfitness on the part of Dale. They live in a small Ohio town in a rented house with adequate room and facilities. Dale has a good job that provides "take home pay" of about $275 every two weeks. He has completed high school by correspondence, and both Sandra and Dale have joined an established church. There are two children in the house—Stephen, whom Dale has adopted, and another child born after the marriage of Dale and Sandra. Sandra does not have outside work and stays home to care for the children and the house. At the trial she indicated a desire to have Kim in their home. This evidence amply supports the finding of fitness and ability to adequately care for the child.

The appellants contend all of Dale's testimony should be rejected because of variances in his testimony at this trial and the habeas corpus hearing. The appellants urged the trial court to invoke the rule of *falsus in uno, falsus in omnibus*. The rule is not one of law in the sense that it must be invoked so as to strike all the testimony of a witness but rather a discretionary rule which can, but need not, be adopted by the trier of the fact. The trial court could have concluded that even though there were variances in material testimony, Dale was telling

the truth at the 1971 hearing. His findings bore this out and they are supported by other credible evidence. We conclude there is sufficient credible evidence to support the findings.

The trial court was apparently of the opinion that it had no right to provide or order rights of visitation to the grandparents. We believe this is an error of law. The trial court can upon proper exercise of discretion grant rights of visitation to relatives. In *Weichman v. Weichman* (1971), 50 Wis. 2d 731, 734, 184 N. W. 2d 882, we said: [4]

"There is no statutory or common-law rule which forbids a court in a divorce action from granting visitation rights to parents or to others. The question is not one of the power of the court but of judgment or of judicial discretion. The underlying principle or guideline for the granting of visitation privileges, as it is for granting custody, is what is for the best interest and welfare of the child. *See Gotz v. Gotz* (1957), 274 Wis. 472, 80 N. W. 2d 359.

"The court's power to control visitation rights flows from sec. 247.24, Stats., and is intertwined with its power to grant custody in divorce actions. . . . visitation rights are not dependent upon the fitness or unfitness of the parents but upon whether the welfare of the child requires it to see and visit members of the family to which it belongs. Other jurisdictions have granted visitation rights to relatives, not for their gratification or enjoyment, but to fulfill the needs of the child. *See: Benner v. Benner* (1952), 113 Cal. App. 2d 531, 248 Pac. 2d 425; *Kewish v. Brothers* (1966), 279 Ala. 86, 181 So. 2d 900; *Lucchesi v. Lucchesi* (1947), 330 Ill. App. 506, 71 N. E. 2d 920."

The trial court clearly was of the belief that the grandparents, Mr. and Mrs. Crute, were fit and proper to have substantial rights of visitation and rightly so. The evidence in the record easily permits a finding that it is

---

[4] (The trial of this matter was concluded before the *Weichman* decision was announced.)

in the best interests of Kim to visit her grandparents. Upon remand of the record the trial court should schedule another hearing to reconsider the question of visitation rights in view of the rules set forth in *Weichman v. Weichman, supra,* and the circumstances as they appear.

The trial court directed that the plaintiff-father should pay the guardian *ad litem* fee which was fixed by the court at $600, with the additional requirement that this fee be paid before he took custody of the minor child.

The father, Dale, contends that as between the parties to this action the Crutes are better able to pay the guardian *ad litem fee.* While the record tends to bear out the claim that the Crutes are better able to pay the guardian *ad litem* costs, the imposition of the obligation to pay such costs rests within the sound discretion of the trial court. The earnings of Dale are such that payment of these costs will not constitute an undue hardship. We find no abuse of discretion in the order that the father pay the guardian *ad litem* fees; we do, however, find it an abuse of discretion to condition the father's right to custody upon such payment. The provision of the judgment requiring the payment of the guardian *ad litem* fee before the plaintiff obtains custody of the child should be stricken.

Upon remand to determine the rights of visitation by the grandparents the trial court may also reconsider when custody shall be given to the father. The record reveals that the child is to remain with the grandparents until this litigation (upon appeal) is completed. If the child is now in school, or other like pertinent circumstances appear, the court may consider these circumstances to temporarily delay the change of custody consistent with the best interests of the child.

*By the Court.*—Judgment affirmed in part, modified and, as modified, affirmed in part, reversed in part and remanded for further proceedings not inconsistent with this opinion. No costs to either party.