PFEIFER, Appellant, v. PFEIFER, Respondent.

*No. 204. Submitted February 4, 1974.—Decided March 5, 1974.*
(Also reported in 215 N. W. 2d 419.)

For the appellant the cause was submitted on the brief of *Thomas R. Cannon, Morton M. Grodsky, Nancy A. Phelps* and *Jordan B. Reich,* Legal Aid Society of Milwaukee.

For the respondent the cause was submitted on the brief of *Joseph T. Lex* of West Allis.

ROBERT W. HANSEN, J.   All issues raised on this appeal relate to the trial court finding that the best interests of the five minor children of the parties re-

quired that custody be awarded to their father. Four separate challenges to the award of custody are involved, and each will be separately considered.

### (1) *Abuse of discretion.*

It is contended that the custody award was against the great weight and clear preponderance of the evidence, and constituted an abuse of discretion. A trial court has wide discretion in determining custody matters, and ordinarily its decision will not be upset unless there is evidence of a clear abuse of discretion.[1] The controlling factor in determining custody disputes is the welfare of the minor children involved.[2]

In the case before us, the trial court, awarding custody to the father, found such custody placement order demanded by the best interests of the children. In support of its custody determination, the trial court cited (1) the continuing adulterous relationship of the plaintiff with an eighteen-year-old; and (2) the "infantile immaturity" of the plaintiff which "lends considerable credence" to the testimony that she is "emotionally un-

---

[1] *Schipper v. Schipper* (1970), 46 Wis. 2d 303, 311, 174 N. W. 2d 474, stating: " 'This court strongly defers to the trial court's findings in custody matters. The reason for this is, of course, the uniqueness of the situation involved in each custody award and the broad understanding of the particular problem which the trial court can achieve in the course of the hearing, which can never quite be duplicated by an appellate court upon a review of the record. . . .' " Quoting *Koslowsky v. Koslowsky* (1969), 41 Wis. 2d 275, 280, 163 N. W. 2d 632.

[2] *Freye v. Freye* (1972), 56 Wis. 2d 193, 196, 201 N. W. 2d 504, stating: "In Wisconsin any '. . . would-be custodian must establish not only fitness and ability to provide adequate care but also that his or her being awarded custody would be in the best interests of the child. . . .' " Quoting *Dees v. Dees* (1969), 41 Wis. 2d 435, 440, 164 N. W. 2d 282.

stable." The trial court did not find the plaintiff an unfit person to have custody, and was not required so to do.[3]

Plaintiff does not quarrel with the trial court's considering as a factor the admitted adulterous relationship with the eighteen-year-old paramour. The relationship appears to have continued up to the time of trial. Adultery is an element to be taken into consideration along with other factors in determining custody.[4] While children are not to be taken from a parent as a penalty for improper conduct,[5] both the fact of adultery and the continuing relationship with the young paramour were factors the trial court properly took into consideration insofar, as it stated in its opinion, as they affected the best interests of the children. As this court has phrased it, "the polestar remains the welfare of the child."[6]

---

[3] *Id.* at page 196, stating: "A trial court need not necessarily find one parent unfit in order to award custody to the other parent on the ground that it would be in the best interest of the child to do so." Citing and quoting *Larson v. Larson* (1966), 30 Wis. 2d 291, 299, 140 N. W. 2d 230, stating: " '. . . A court should not necessarily feel impelled to make a finding of unfitness on the part of the mother when it has determined that the best interests of the child demand its custody be placed in the father. . . .' "

[4] *Molloy v. Molloy* (1970), 46 Wis. 2d 682, 688, 176 N. W. 2d 292, stating: ". . . we do not hold that adultery as a matter of law renders a mother unfit for the custody of her children; it is an element to be taken into consideration with other factors in determining her fitness. . . ."

[5] *Dees v. Dees, supra,* footnote 2, at page 442, stating: ". . . This court has said that children are not to be taken from a parent custodian as a penalty for improper conduct. It is equally true that children are not to be given to a custody-seeking parent as a premium or reward for good conduct or recovery from mental or emotional difficulties.

". . . the trial court has the responsibility to determine what disposition and what conditions will best serve the interests of the children involved. . . ."

[6] *Welker v. Welker* (1964), 24 Wis. 2d 570, 578, 129 N. W. 2d 134.

The thrust of plaintiff's objection is that the finding of emotional instability rests largely on the lengthy letters written by plaintiff to her paramour in which there are references to her committing suicide, getting high on diet pills, losing her mind, thinking of killing her husband, plus statements that the children "bug me" and that she had done a "lousy job of raising the children." These letters were written at the time the plaintiff filed a suit for divorce, about one year before the date of trial. So plaintiff contends they relate to her condition "in the past and not . . . at the time of hearing." The contention relies heavily upon this sentence in *Larson:* "Fitness should be determined as of the time of the hearing . . . ." [7] Three points should be made. (1) *Larson* also provides that evidence of past conduct or prior emotional conditions shall be relevant and material "insofar as it constitutes a reasonable guide to present qualifications and future probabilities." [8] It was for the trier of fact to determine the degree to which the emotional instability evidenced by the letters was a reasonable guide to present qualifications and future probabilities. (2) *Larson* also holds that clear demonstration that a parent has been unfit in the past is not to preclude "him or her from establishing that he or she is now fit morally and otherwise to have the custody of the minor child." [9] The burden is not upon spouse or court to establish lack of recovery from a period of emotional instability and upset. Here the plaintiff testified that she no longer suffered from the emotional upsets of divorce-filing time, but the trial court was not obliged to accept such self-serving declaration, or the testimony of neighbors that they observed nothing awry, as evidence of full recovery from the condition of emotional instability. (3) Ad-

[7] *Larson v. Larson, supra,* footnote 3, at page 299.

[8] *Id.* at page 299.

[9] *Id.* at page 299.

ditionally, the trial court here had before it testimony of the defendant as to outbursts of temper directed at the children, and the testimony of the paternal grandmother concerning adverse effects upon one of the children of the plaintiff's conduct toward the child. This court has held that an emotional disturbance of a parent adversely affecting a child is ground for a custody change.[10] On these facts and this record, we find no abuse of discretion in the trial court's award of custody of the children to the defendant father.

(2) *Transfer of custody.*

It is contended by plaintiff that the trial court order awarding custody to the defendant father did not give proper weight to the fact that, under a court order for temporary custody, the children had been living for one year with the plaintiff mother with no apparent adverse effects upon them. Where custody is awarded to one parent in a divorce proceeding, and there is a subsequent effort to change that custody order, there may well be a tendency to "let well enough alone."[11] In *Koslowsky,* where a change of custody was sought after the children of divorced parents had been for five and one-half years in the home of their father and paternal grandparents,

[10] *Seelandt v. Seelandt* (1964), 24 Wis. 2d 73, 82, 128 N. W. 2d 66, this court stating: ". . . an emotional disturbance of a parent which makes it harmful to the welfare of a minor child to continue custody in such parent, should constitute unfitness . . . . We so hold. . . ."

[11] *Smith v. Smith* (1957), 1 Wis. 2d 174, 179, 83 N. W. 2d 672, stating: ". . . The alternative is to place Leslie with her own mother which is desirable, but in new surroundings and in a home headed by a comparative stranger. The existing arrangement works well in Leslie's interest. Is the alternative so clearly and certainly superior that the trial judge could not refuse to embrace it without abusing his discretion? He determined to let well enough alone. We consider he must be affirmed." *See also: Bliffert v. Bliffert* (1961), 14 Wis. 2d 316, 320, 321, 111 N. W. 2d 188.

this court did say: ". . . If the present arrangements for custody are working out satisfactorily, considering the alternatives available, the children should not be uprooted and placed in a different environment unless it appears that the best interests of the child will be enhanced. . . ."[12] This statement is not to be read as doing more than listing a factor to be considered by the trial court in determining whether a change of custody would be in the best interests of the children involved. It is the possible or potential adverse effect of a shift in custodial arrangements upon the child that is to be considered, not merely the fact that a change of custody involves a change of surroundings.[13] This is particularly true when no more is involved than a temporary custody order controlling the situation from the commencement of a divorce action to its date of trial. It is not expected that such entirely temporary custodial provisions will be preceded by the full inquiry that accompanies the post-trial award of custody to one or the other of two divorce-bound parents. We see neither reason nor merit to upgrading an order for temporary custody, pending trial, into some near-permanent determination of the rights of the parents and the best interests of the children. In the case before us, during the year between commencement

---

[12] *Koslowsky v. Koslowsky, supra,* footnote 1, at page 283, this court also stating: ". . . We believe, as a generalization, that forced changes of custodial environment of minor children of divorced parents, without substantial justification, in themselves can have a detrimental effect upon the well-being and stability of the children."

[13] *Greenlee v. Greenlee* (1964), 23 Wis. 2d 669, 675, 127 N. W. 2d 737, this court stating: "The trial court has made a specific finding that the best interests and general welfare of Terri will be promoted by a change of her care and custody to the defendant father, subject to reasonable visitation rights of the plaintiff mother. On this record we are unable to hold that this finding is against the great weight and clear preponderance of the evidence."

and trial, the defendant father visited with the children and/or took them on outings regularly twice a week. He took the children regularly to the paternal grandparents' home for Sunday dinner. There is evidence of a close relationship, even while the action was pending, between the children and their father and paternal grandparents. We see no basis for holding that transfer of custody to the defendant father is likely to cause emotional or psychological disturbances because of the fact of transfer.[14]

### (3) *Social service investigation.*

It is the contention of plaintiff that the failure of the trial court to order an investigation of the alternatives as to custody placement by a qualified social service investigator constitutes reversible error. Plaintiff-appellant does not claim that she requested that such social service investigation be conducted. Rather, she contends that the trial court should have ". . . on its own motion or upon the motion of the respondent [defendant] ordered a custody evaluation." It is a little late to join a motion of the adversary party after the trial has been concluded. As to the responsibility of the trial court to order a custody investigation and evaluation, the short answer is that such court-initiated social service investigation has been clearly authorized,[15] commended[16] and recom-

[14] *Id.* at page 676, this court stating: ". . . The transfer of custody from the Lind home to that of defendant is unlikely to cause any psychological or emotional disturbance in Terri because she has been accustomed to staying overnight in her father's home, and enjoys being with her father."

[15] *Dees v. Dees, supra,* footnote 2, at page 445, stating: "Wisconsin was among the first of the states in the union to permit reports of social agencies to be considered by family courts and made part of the record in divorce and custody hearings. . . ."

[16] *Wendland v. Wendland* (1965), 29 Wis. 2d 145, 155, 138 N. W. 2d 185, stating: "We commend the trial court for the manner

mended,[17] but not required.[18] This court has recently held, as to social service investigations conducted by qualified social workers, that "neither the use of such witnesses nor the acceptance of their recommendations is mandatory."[19] Additionally, where the defendant did the asking for such investigation, the plaintiff is in no position to complain that the request she did not join was not granted.

(4) *Guardian ad litem.*

It is contended by the plaintiff that the trial court in this case should have appointed a guardian *ad litem* to represent and protect the interests of the five minor children involved in and affected by the custody determination. In this state the children of parents involved in divorce litigation are "interested and affected parties" in such action.[20] In post-trial hearings as to custody,

in which it proceeded in the consideration of this distasteful controversy. Not only did it call upon the department of domestic conciliation for a complete and impartial investigation of the question of custody . . . ." *See also: Gochenaur v. Gochenaur* (1969), 45 Wis. 2d 8, 19, 172 N. W. 2d 6, stating: ". . . this court has commended the use by trial courts of reports made by qualified child welfare personnel . . . ."

[17] *Weichman v. Weichman* (1971), 50 Wis. 2d 731, 737, 738, 184 N. W. 2d 882, this court stating: "The resolution of visitation rights requires the court to hold an adequate hearing directed to the issue. . . . At this hearing we think it would be well if the trial court used the services of a qualified child welfare agency if one is available. . . ."

[18] *Larson v. Larson, supra,* footnote 3, at page 302, this court stating: ". . . The use of reports by qualified child welfare personnel is commended. However, their use and the weight to be given to them is a matter resting within the sound discretion of the trial court."

[19] *Fritschler v. Fritschler* (1973), 60 Wis. 2d 283, 287, 208 N. W. 2d 336.

[20] *Wendland v. Wendland, supra,* footnote 16, this court stating at page 157 of appointment of guardian *ad litem:* ". . . This extra

as well as at the time of trial, the trial court has the "responsibility to determine what disposition and what conditions will best serve the interests of the children involved." [21] In the discharge of that responsibility one of the ". . . affirmative steps that can be taken by trial courts in custody matters is the appointment of a guardian *ad litem* to represent the interests of the child or children who are subjects, not objects, of the court inquiry. . . ." [22] Where court orders in custody matters were reversed and remanded, this court has on several instances directed that a guardian *ad litem* be appointed for the rehearing ordered. [23]

consideration is due the children who are not to be buffeted around as mere chattels in a divorce controversy, but rather are to be treated as interested and affected parties whose welfare should be the prime concern of the court in its custody determinations."

[21] *Dees v. Dees, supra,* footnote 2, at page 442, citing and quoting *Kritzik v. Kritzik* (1963), 21 Wis. 2d 442, 448, 124 N. W. 2d 581: " 'It is his [the trial court's] task to determine what provisions and terms would best guarantee an opportunity for the children involved to grow to mature and responsible citizens, regardless of the desires of the respective parties. This power, vested in the family court, reflects a recognition that children involved in a divorce are always disadvantaged parties, and that the law must take affirmative steps to protect their welfare.' "

[22] *Id.* at page 443.

[23] *Id.* at page 444, stating: ". . . this is clearly a case in which the trial court should have appointed an attorney to serve as guardian *ad litem* for the child, Scott. . . ." *Weichman v. Weichman, supra,* footnote 17, at page 738, stating: ". . . Finally, the trial court should appoint a guardian *ad litem* for the child on this issue. . . ." *Molloy v. Molloy, supra,* footnote 4, at page 689, stating: ". . . the trial court should appoint a guardian *ad litem* for the five-year-old daughter . . . ." *Gochenaur v. Gochenaur, supra,* footnote 16, at pages 19 and 20, stating: "We deem the appointment of a guardian *ad litem* especially appropriate in a case such as this where the parties may not fully present the factors which will best serve the children's present and future well-being. . . ." *See also: Edwards v. Edwards* (1955), 270 Wis. 48, 56b, 70 N. W. 2d 22, 71 N. W. 2d 366.

It is now required by statute in this state that in any action involving marriages, divorce or the custody of children, that the trial court "shall appoint a guardian *ad litem* to represent such children" whenever "the court has reason for special concern as to the future welfare of the minor children." [24] So the question narrows to whether it was an abuse of discretion for the trial court here not to appoint a guardian *ad litem* for the five minor children of the parties, at least at the point in the proceedings where the answer of the defendant created a dispute as to the custody placement of such children. Given the fact of a custody dispute raised by the pleadings, plus the number (five) and the ages (eight, seven, six, four and two) of the children, three members of the court—the writer and Justices HORACE W. WILKIE and NATHAN S. HEFFERNAN—would find a clear abuse of discretion, finding this a clear case in which the trial court should have appointed an attorney to serve as guardian *ad litem* for the children. The majority of the court feels that it would be applying a hindsight-is-better-than-foresight approach to here hold that the trial court was alerted to the nature and extent of the dispute as to custody by the pleadings or before trial. The plaintiff's complaint alleged that both parties were fit and proper persons to have custody and asked only: "That the Court make such order as may be just and proper regarding the custody of the minor children of the parties." The

---

[24] Sec. 247.045, Stats., provides: "**Guardian ad litem for minor children.** In any action for an annulment, divorce, legal separation, or otherwise affecting marriage, when the court has reason for special concern as to the future welfare of the minor children, the court shall appoint a guardian ad litem to represent such children. If a guardian ad litem is appointed, the court shall direct either or both parties to pay the fee of the guardian ad litem, the amount of which fee shall be approved by the court. In the event of indigency on the part of both parties the court, in its discretion, may direct that the fee of the guardian ad litem be paid by the county of venue."

defendant's answer alleged only that defendant was a fit and proper person to have custody, and asked therefor. It was only after the taking of testimony and the introduction of letters written by the plaintiff mother that it became evident that there was clearly reason for special concern as to the future welfare of the minor children. While a mid-trial appointment of a guardian *ad litem* was possible, that hardly serves the full purpose of providing legal representation to protect the rights and welfare of the minor children in divorce litigation. If the custody determination here made had been reversed on other grounds raised, all members of this court are agreed that the appointment of a guardian *ad litem* would have been directed for the rehearing. However, the court majority agrees with the statement that, even in a close case, in a custody appeal ". . . an appellate court ought not reverse the findings of a trial court unless it is completely satisfied the trial court has clearly abused its discretion and decided the matter against the great weight and clear preponderance of the evidence. . . ." [25] The judgment of the trial court, and the award of custody of the children of the parties to the defendant husband that the judgment contains, is affirmed.

*By the Court.*—Judgment affirmed.

---

[25] *King v. King* (1964), 25 Wis. 2d 550, 557, 131 N. W. 2d 357.