137 Wis.2d 375 (1987)
404 N.W.2d 530
IN RE the CUSTODY OF D.M.M.:
F.P.R., Appellant-Petitioner,
v.
J.M., Respondent.
No. 85-1792.
Supreme Court of Wisconsin.
Argued February 9, 1987.
Decided April 29, 1987.
*376 For the appellant-petitioner there were briefs by Alan J. White, Helland Law Offices, Wisconsin Dells and David H. Bennett, Bennett and Bennett, Portgage, and oral argument by Alan J. White.
For the respondent there was a brief by Mary Gibson-Glass and Legal Action of Wisconsin, Inc., Madison and oral argument by Mary Gibson-Glass.
STEINMETZ, J
The issue in this case is whether a trial court has the authority to grant visitation rights to any persons other than those named in sec. 767.245, Stats.,[1] parent, grandparent or greatgrandparent. *377 There is a preliminary issue of whether the visitation rights of F.P.R. had already been litigated in an action before the Honorable Raymond E. Gieringer in Adams county circuit court, which would bar the relitigation of this action in Columbia county circuit court.
The circuit court for Columbia county, the Honorable Earl J. McMahon, denied the petition of F.P.R. for visitation for two stated reasons:
"(A) The Circuit Court for Columbia County is not the proper forum for an appeal of an Order of the Circuit Court for Adams County, Wisconsin. By the Amended Petition of November 9, 1984, Petitioner is requesting this Court to over-rule the Order of June 7, 1984, entered by the Circuit Court for Adams County which states in part:

*378 "(3) The Court makes no Order for visitation for [F.P.R.] at this time, having found that it has no authority to order visitation for [F.P.R.].
"(B) Section 767.245(4), Wisconsin Statutes, is as follows:
"(4) `The Court may grant reasonable privileges to a grandparent or great grandparent of any minor child upon the grandparent or great grandparents' petition to the Court with notice to the parties if the Court determines that it is in the best interests and welfare of the child and issue any necessary order to enforce the same.' (Underlining mine)"
Judge McMahon concluded his decision by stating:
"The Legislature has clearly enumerated those persons to whom visitation rights may be granted and the designated persons do not include the category of `aunt.' In view of this limitation, the Court declines to expand the category, and leaves that to the legislature if they elect so to do."
The court of appeals did not discuss the issue of res judicata which was based on a previous denial of visitation for F.P.R. in Adams county and the same relief subsequently sought by petition before the Columbia county circuit court.[2] The court of appeals stated that the sole issue is whether sec. 767.245, Stats., gives trial courts authority to order visitation for persons other than the child's parents, grandparents *379 or greatgrandparents. The court of appeals found that the plain language of sec. 767.245 limits the exercise of visitation rights to those listed in the statuteparents, grandparents and greatgrandparents and therefore affirmed the trial court.
The child in this action was born on November 25, 1976, to J.M. and her husband at the time. On or about January 23, 1978, physical custody of the child was informally given to F.P.R., an aunt of the child. On November 7, 1978, F.P.R. was appointed guardian by the circuit court in Adams county. This guardianship was terminated in Adams county on June 5, 1984, almost six years after being granted. The request for visitation in Adams county circuit court was in the context of a guardianship proceeding and allegedly no testimony was taken. The order discharging the guardianship did not grant F.P.R. visitation. The Adams county circuit court in denying visitation to F.P.R. did not cite sec. 767.245, Stats., but rather stated visitation would not be granted for F.P.R. "at this time." This was not a clear statement of the court's lack of authority.
In Columbia county J.M. filed a motion to dismiss, or in the alternative, for a change of venue. The allegation was that the guardianship of F.P.R. "has been litigated and is still pending in Adams County."
After the guardianship was terminated in Adams county, F.P.R. filed a motion to vacate; a hearing was set and notices sent by the register in probate.
The Columbia county court signed a temporary order denying J.M.'s alternative motion to dismiss or change of venue relief. F.P.R. then filed a notice of motion and motion for appointment of a guardian ad litem for the child and for a case study and psychological studies to be conducted on all the parties.
*380 The Columbia county circuit court then signed an order filed September 28, 1984, stating that F.P.R. seeks to amend her petition for a judgment awarding her rights of visitation, "and it having appeared to the court that the attorney for [J.M.] has no objection to an amendment of the Petition in respect thereto." The court then ordered that F.P.R. "is, given permission to serve and file an amended petition herein to provide for [an] award to her of rights of visitation," and F.P.R. was allowed to withdraw her motion for an appointment of a guardian ad litem and request for case and psychological studies. The motion for visitation was then filed in response to the order.
J.M. responded to this amended petition requesting that F.P.R. be denied the requested relief of visitation, or in the alternative, under sec. (Rule) 802.06(2)(f), Stats., moved to dismiss for failure to state a claim since F.P.R. is not a grandparent or greatgrandparent under sec. 767.245(4). J.M.'s brief filed with her response did not argue res judicata but merely stated that Judge Gieringer removed F.P.R. as guardian and, "The Court made no visitation award to petitioner."
Res judicata was presented as an issue in J.M.'s brief before the court of appeals. The court of appeals did not discuss res judicata in its decision which upheld J.M.'s position on the merits. If the court of appeals found that the res judicata argument was valid, it would not have reached the merits of the claim that the trial court had no authority to grant visitation under the statute. Therefore, the court of appeals silently rejected the claim of res judicata.
*381 Section 802.02, Stats.,[3] states that the defense of res judicata must be raised either in the responsive pleadings or by motion. As the court stated in Case v. Hoffman, 100 Wis. 314, 330, 75 N.W. 945 (1898):
"A judgment makes only that which was in issue and decided res judicata. The reasons given by the judges, whether few or many, are not res judicata. Nor is the effect of the judgment as an estoppel either restrained or enlarged by the reasons given, nor can its effect as res judicata extend to any matter only incidentally cognizable, or which is to be inferred by argument from the judgment."
As we stated in McCourt v. Algiers, 4 Wis. 2d 607, 610, 91 N.W.2d 194 (1958):
"`Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent *382 action on a different cause of action.'" Quoting Restatement, Judgments, p. 293, sec. 68(1).
That is when res judicata applies and that is not the posture of the issue of visitation in this case. As we also stated in McCourt, fairness is one aspect of the application of res judicata. And, we stated in Alexopoulos v. Dakouras, 48 Wis. 2d 32, 37, 179 N.W.2d 836 (1970):
"The defense of res judicata cannot be raised even where it is applicable by the method employed by the defendant herein. We have frequently stated that where res judicata is raised as a defense it must be pleaded and proved." See also Lowe v. Laursen, 201 Wis. 309, 230 N.W. 75 (1930).
The Columbia county circuit court considered the visitation issue on its merits, even though the court also stated it believed F.P.R.'s petition was in substance an appeal of the Adams county denial of visitation. The petition in Columbia county does not qualify as an appeal. In addition, the petition for visitation by F.P.R. In Adams county, it appears, was not considered as to lack of court authority through sec. 767.245, Stats., since Judge Gieringer of Adams county couched his decision in terms of "not at this time," which implies there is not a lack of authority.
In the Columbia county order dated September 14, 1984, and assented to by defendant's attorneys, the court specifically held that the attorney for the defendant had no objection to amending the petition from that of an action for custody to one for visitation.
As stated at 46 Am. Jur. 2d, Judgments, sec. 585 (1969):
"Sometimes the failure to plead matters calling for the application of the doctrine of res *383 judicata is regarded as a waiver thereof, but the failure to plead the estoppel of a judgment in the first instance has been held not to be a conclusive waiver of a party's right to plead such an estoppel if he has a further opportunity so to do, unless, perhaps, he has taken a position so inconsistent with its assertion as to amount to an election to abandon it."
The defendant's posture has been inconsistent with the application of the doctrine of res judicata.
On the merits of this case, sec. 767.245(2), Stats., states:
"The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child; but the court shall not terminate a parent's visitation rights unless it finds that the visitation would endanger the child's physical, mental or emotional health."
Previous to the action before the Adams county circuit court, F.P.R. had custody and, if not prevented by law, the court should have the power to modify the custody order into a visitation order, if in the best interest of the child. To determine otherwise would mean that F.P.R., who had legal custody for six years, was not a person suited to be granted visitation. There is a distinction between a request for visitation ab initio from a person who never had custody of the child and a visitation request from a party who held custody under a valid custody order. Since F.P.R. had custody for approximately six years prior to the request for visitation, the court had the power to modify a previously existing visitation right that *384 flowed from the custody itself, if in the child's best interest unless prohibited by sec. 767.245, Stats.
In determining whether sec. 767.245, Stats., is ambiguous we consider the entire section and not just subsection (4). Section 767.245 is entitled "Visitation" and subsec. (4) is only a portion thereof.
As we stated in Tahtinen v. MSI Ins. Co., 122 Wis. 2d 158, 166-67, 361 N.W.2d 673 (1985):
"A statute is ambiguous if it is capable of being construed in two different ways of reasonably wellinformed persons. Kollasch v. Adamany, 104 Wis. 2d 552, 561, 313 N.W.2d 47 (1981). However, we have recognized that parties have obviously disagreed as to a statute's meaning whenever a case involving statutory construction reaches this court. State v. Wittrock, 119 Wis. 2d 664, 670, 350 N.W.2d 647 (1984); Aero Auto Parts, Inc. v. Dept. of Transp., 78 Wis. 2d 235, 238-39, 253 N.W.2d 896 (1977). Therefore, the court must examine the language of the statute itself to determine whether well-informed persons should have become confused. Wittrock at 670."
In Ball v. District No. 4, Area Board, 117 Wis. 2d 529, 538, 345 N.W.2d 389 (1984), the court stated: "If the language of the statute is ambiguous or unclear, this court will endeavor to ascertain the intent of the legislature as disclosed by the scope, history, context, subject matter and object of the statute."
J.M. claims the trial court has no authority to grant visitation privileges to F.P.R. under sec. 767.245, Stats. Subsection (1) provides that: "A parent is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical, mental or emotional health." (Emphasis added.) The word "parent" is not *385 defined in ch. 767. Because the legislature did not see fit to modify the "parent" as "natural parent" or "biological parent," the meaning of the word is facially ambiguous. In order to determine if reasonably well-informed individuals would find a person who, under court order, raised a child for almost six years to be a "parent" under the statute, it is proper to examine a standard dictionary. Figgs v. City of Milwaukee, 121 Wis. 2d 44, 51-52, 357 N.W.2d 548 (1984). In Webster's Third New International Dictionary (1967), in addition to other meanings, parent is defined as "a person standing in loco parentis although not a natural parent."[4] Clearly, F.P.R. was *386 standing in loco parentis for several years. Her requests for visitation came while she still stood in loco parentis. However, since the statute might have been intended simply to mean natural parent, under the rules of statutory construction, we are justified in examining the legislative history of the section.
A literal and exclusory reading of sec. 767.245(4), Stats., would mean that no adult brothers or sisters of the child would be able to petition for visitation rights and yet they are members of the bloodline family. It raises the issue of reasonableness that the legislature would deny such persons in relationship to a child a right to at least petition for visitation. Therefore, by the very wording of subsec. (4) there is an ambiguity as to the meaning of the legislature. Are all persons other than parents, grandparents or greatgrandparents prohibited from petitioning for visitation of a child, or does subsec. (4) merely codify existing law which was not intended to abrogate the visitation rights of others when the best interests of the child warrant? Ambiguity in a statute can be created by the interaction of two separate statutes, as well as by the interaction of the words and structure of a single statute. State v. Kenyon, 85 Wis. 2d 36, 49, 270 N.W.2d 160 (1978).
Section 767.01, Stats., grants jurisdiction to the circuit court of all actions affecting the family and such courts have authority to do all acts and things necessary and proper in such actions to carry their orders and judgments into execution as prescribed in the chapter. Actions affecting the family are listed in *387 sec. 767.02, and subsec. (1)(k) is "Concerning visitation rights to children" without limiting the persons who can petition.
Section 767.245(4), Stats., did not grant the courts limited authority to grant visitation, but rather made it clear to courts that grandparents and greatgrandparents have a right recognized by statute that is not subject to developing and changing common law. Since the common law is determined by trial courts on a case basis, there is no assurance of equal treatment in all courts of the state. By being named in the statute, grandparents and greatgrandparents are given a status to be recognized equally by all the courts of the state.
The first visitation language in Wisconsin Statutes appeared in sec. 247.24(1)(c), Stats. Ch. 122, Laws of 1975. This visitation language was included in sec. 247.24(1) based on the decisions in Gotz v. Gotz, 274 Wis. 472, 80 N.W.2d 359 (1957), Weichman v. Weichman, 50 Wis. 2d 731, 184 N.W.2d 882 (1971), Ponsford v. Crute, 56 Wis. 2d 407, 202 N.W.2d 5 (1972) as stated by the Draftsman's Note for the Legislative Reference Bureau, LRB-366-1 dated November 7, 1974, as follows:
"The supreme court established in Weichman v. Weichman, 50 Wis. 2d 731, 734, 184 N.W.2d 882 (1970), and reaffirmed in Ponsford v. Crute, 56 Wis. 2d 407, 415, 202 N.W.2d 5 (1972), that the court in actions affecting marriage may grant visitation privileges to grandparents and others where it is in the best interest of the child. Therefore, the treatment of s. 247.24(1) in the attached draft is merely a codification of existing law." (Emphasis added.)
*388 Both Weichman and Ponsford discussed the rights for visitation by grandparents and "other parties." Relying on such cases, it is unlikely the legislature intended to limit visitation to only grandparents and greatgrandparents.
It is clear that in the first codification of ch. 122, Laws of 1975, which became sec. 247.24(1)(c), Stats., the grandparent visitation was not meant to be exclusive. Nowhere in sec. 247.24 does the legislature provide for visitation rights of the parents themselves.[5] If, as J.M. would have us believe, the legislature intended this language to limit the authority of the court only to grant visitation to those parties mentioned in that statute, biological and natural parents would have been excluded from claiming visitation rights. The "grandparent" language, therefore, was intended to supplement common law rights of grandparents and others to petition for visitation. Since the language of that statute remained essentially unchanged when it was moved into the new visitation statute, there is no reason to believe the legislature's intent regarding the statute changed from a supplement of the common law to a supplantation of the common law.
On the subject of legislative interpretation, we stated in Leach v. Leach, 261 Wis. 350, 357-58, 52 N.W.2d 896 (1952):

*389 "`The language employed is not inconsistent with the idea that the rule of the common law is still to prevail.'
"This same rule is stated in 3 Sutherland, Statutory Construction (3d ed.), p. 16, sec. 5305, as follows:
"`There is a presumption that a statute is consistent with the common law, and so a statute creating a new remedy or method of enforcing a right which existed before is regarded as cumulative rather than exclusive of the previous remedies.'
"Crawford, Statutory Construction, p. 422, sec. 228, states:
"`If a statute is ambiguous or its meaning uncertain, it should be construed in connection with the common law in force when the statute was enacted. This is the rule whether the statute is simply declaratory of the common law, or whether it abrogates, modifies, or alters it in any way. And there is a presumption that the lawmakers did not intend to abrogate or alter it in any manner, although where the intention to alter or repeal is clearly expressed, it must be given effect by the courts. Even where this intention appears, there is a further presumption that the lawmakers did not intend to alter the common law beyond the scope clearly expressed, or fairly implied.'"
Further, in regard to statutory interpretation from Sutherland, Statutory Construction, sec. 50.01, at 421-22 it states:
"Where the language of the statute is subject to reasonable doubt, reference to common-law principles may provide a valuable clue as to whether a particular situation is controlled by the statute. Therefore, all legislation must be interpreted in *390 the light of the common law and the scheme of jurisprudence existing at the time of its enactment. The common law, having been classified and arranged into a logical system of doctrine, principles, rules, and practices, furnishes one of the most reliable backgrounds upon which analysis of the objects and purposes of a statute can be determined. Thus, the rules and presumptions which provide the basis for determining legislative intent are of common-law origin. The legislature is presumed to know the common law before statute was enacted.
"Absent an indication that the legislature intends a statute to supplant common law, the courts should not give it that effect."
The grandparent language of sec. 767.245, Stats., was a codification of case law to further protect grandparent and greatgrandparents' rights and was not meant thereby to exclude other relatives. The analysis of the Legislative Reference Bureau stated: "This bill codifies the authority of the court in actions affecting marriage to grant visitation privileges to grandparents where it is in the best interest of the child." See 1975 Senate Bill 11.
It is apparent from sec. 247.24(1)(c), Stats. (1977) which became sec. 767.245(4) that the legislature wished to provide statutory protection for grandparents and greatgrandparents and to make certain those two groups had a statutory right to be heard on the question of visitation. The legislature did not intend to supplant the common law that allowed other persons to petition for visitation, but intended that grandparents and greatgrandparents be provided with a uniform right to petition in all the courts of the state. The legislature intended that the best interest of the child *391 should control the decision to grant visitation in all these situations, which is the polestar of the statute.
By the Court.The decision of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.
LOUIS J. CECI, J. (dissenting).
The emotional appeal of the majority opinion cannot be denied. However, I believe that the court of appeals, in its published decision, provides the correct interpretation of the plain, unambiguous, and clear provisions of sec. 767.245, Stats. This court has stated that, in determining the legislative intent of a statute, "first resort must be to the language of the statute itself." Ball v. District No. 4, Area Board, 117 Wis. 2d 529, 538, 345 N.W.2d 389 (1984). This court may attempt to ascertain the legislative intent by delving into the scope, history, subject matter, and context of the statute only if the language of the statute is ambiguous or unclear.
The court of appeals properly stated that visitation is controlled by sec. 767.245, Stats., and that the plain language of that statute limits those entitled to visitation. Those who may be entitled to visitation are the parents, grandparents, and greatgrandparents.[1]
It is my view that the statute is clear and unambiguous on its face and permits a grant of visitation rights only to those specified. Since the statutory meaning is clear and unambiguous, this *392 court may not resort to extrinsic sources to aid in its interpretation of the statute. The legislature's failure to specifically confer authority on the court to grant visitation to persons other than those specified is evident, especially if one applies the doctrine of expressio unius est exclusio alterius.
The majority erroneously contends that the visitation provision contained in sec. 247.24(1)(c), Stats. 1975,[2] was not meant to apply exclusively to grandparents and relies on the holdings in Weichman v. Weichman, 50 Wis. 2d 731, 184 N.W.2d 882 (1971), and Ponsford v. Crute, 56 Wis. 2d 407, 202 N.W.2d 5 (1972), for support. Those holdings were codified by sec. 247.24(1)(c). See, Draftsman's Note for the Legislative Reference Bureau, LRB-366-1, dated November 7, 1974; majority opinion at page 387. However, the majority reads Weichman and Ponsford as establishing a body of law permitting visitation to a broad category of "other parties" and contends that that body of law continues in full force today. A broad reading of Weichman and Ponsford is not warranted, given the narrowness of the issues in each of those cases.
In Weichman, then Chief Justice Hallows set forth the sole issue on review in that case: "[T]he *393 issues were narrowed to whether the court abused its discretion in granting visitation rights to the paternal grandparents." 50 Wis. 2d at 734. (Emphasis added.)
In Ponsford, the court characterized the dispute as one "between the natural father and the maternal grandparents for the custody of a small child." 56 Wis. 2d at 409. The court was unambiguous in that case when it specifically defined the issues as follows:
"1. In child custody cases does the doctrine of the best interests of the child prevail over the right of a parent to the custody of the child?
"2. Was there sufficient credible evidence to support the finding that the father is a fit and proper person to have the care and custody of his minor child?
"3. Did the trial court have legal authority to grant visitation rights to the grandparents?
"..." Id. at 411-12.
In Ponsford, the court quoted from the dicta set forth in Weichman, which stated that, "`There is no statutory or common-law rule which forbids a court in a divorce action from granting visitation rights to parents or to others.'" Id. at 415, quoting Weichman, 50 Wis. 2d at 734. It is upon the use of such dicta that the majority attempts to build its case to permit, over the objection of the natural parents, an order for visitation of an aunt who had previously had custody of the child for six years, by stipulation of the parents.
Reliance on that dicta is inappropriate for two reasons. First, as noted above, both Weichman and Ponsford involved visitation and/or custody disputes between a natural parent and a grandparent. Neither Weichman nor Ponsford can be construed to apply to a broad category of individuals, given the narrowness of the statement of the issues and holdings in both of *394 those cases. The reference to "others" is pure dicta and hardly provides support for an expansive reading of the current visitation statute.
Second, at the time Weichman and Ponsford were decided, there was no statute exclusively governing visitation. It was not until 1977, when provisions of the Family Code were substantially amended, that this court was provided with any explicit legislative guidance with respect to visitation rights. See, sec. 247.245(4), Stats. 1977. Section 247.245(4) (now 767.245(4)) additionally included greatgrandparents within the ambit of individuals covered by the visitation statute. I view this section as a definitive and exclusive expression of the legislature's intent on visitation matters.
Section 247.24, Stats. 1975, never spoke solely or even primarily to the question of visitation. Rather, its focus was on "the care, custody, maintenance and education of the minor children of the parties" ("the parties" obviously referring to the parents). Section 247.24(1)(a). The reference to visitation which is contained in sec. 247.24(1)(c) is merely ancillary to the custody portions of the statute. Yet the majority continues to rely heavily on sec. 247.24(1)(c) to support its position. I believe that the court errs in so doing.
In any case, even assuming that extrinsic sources such as sec. 247.24(1)(c) and the Weichman and Ponsford cases are relevant due to an arguable ambiguity in the current sec. 767.245(4), the majority's reading of those sources is surprisingly selective. Section 247.24(1)(b), Stats. 1975, states, in part, that:
"... if the interest of any such child demands it, and if the court finds either that the parents are unable to adequately care for any such child or are *395 not fit and proper persons to have the care and custody thereof, [the court] may declare such child a dependent and give the care and custody of such child to a relative (as defined in ch. 48) of the child, a county agency specified in s. 48.56(1), a licensed child welfare agency, or the department of health and social services. ..."
A relative, as currently defined in ch. 48, means
"... parent, grandparent, stepparent, brother, sister, first cousin, nephew, niece, uncle or aunt. This relationship may be by consanguinity or direct affinity." Section 48.02(15), Stats.[3]
It is my view that any purported ambiguity in sec. 767.245(4) can be resolved by reference to this section, for it seems obvious that the legislature could very easily have inserted the word "relative" in the current visitation statute, just as it did in sec. 48.02(15). With the insertion of the word "relative," visitation for an aunt would have been explicitly provided for. Instead, the current statute is limited to parents, grandparents, and greatgrandparents.
In addition, the same statutory section which supplies a definition of "relative" also supplies a definition of parent, as follows:
"`Parent' means either a biological parent, a husband who has consented to the artificial insemination of his wife under s. 891.40, or a parent by adoption. If the child is a nonmarital child who is not adopted or whose parents do not subsequently intermarry under s. 767.60, `parent' includes a *396 person adjudged in a judicial proceeding to be the biological father. `Parent' does not include any person whose parental rights have been terminated." Section 48.02(13), Stats.[4]
If the majority is confused with respect to the definition of the word "parent," rather than looking to a secondary definition in a dictionary, it should look to sec. 48.02(13) for guidance. When reading the definitions of "parent" and "relative" contained in sec. 48.02, it becomes evident that aunts, uncles, cousins, et al. have received separate recognition by the legislature. It is equally evident that relatives, beyond those specifically noted, have not received separate legislative recognition in the current visitation statute, sec. 767.245. Therefore, even if the visitation statute is viewed as ambiguous, reference to outside sources such as sec. 247.24, Stats. 1975, (and, in turn, sec. 48.02), does not help the majority to reach the result it advocates here. Rather, these sources militate against the majority's interpretation of the statute.
For these reasons, I dissent. I am authorized to state that JUSTICE ROLAND B. DAY joins in this dissenting opinion.
NOTES
[1] Section 767.245, Stats., provides as follows:

"767.245 Visitation. (1) A parent is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical, mental or emotional health.
"(2) The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child; but the court shall not terminate a parent's visitation rights unless it finds that the visitation would endanger the child's physical, mental or emotional health.
"(3) Visitation may not be denied for failure to meet financial obligations to the child or former spouse, nor shall visitation be granted for meeting such obligations.
"(4) The court may grant reasonable visitation privileges to a grandparent or greatgrandparent of any minor child upon the grandparent's or greatgrandparent's petition to the court with notice to the parties if the court determines that it is in the best interests and welfare of the child and issue any necessary order to enforce the same.
"(5) A parent denied visitation rights under this section may not have or exercise the rights of a parent or guardian under s. 118.125 with regard to the pupil records of the child as to whom visitation rights are denied.
"(6) Whenever the court grants visitation rights to a parent, it shall order the child's custodian to provide to the parent having visitation rights 60 days' notice of the custodian's intention to establish legal residence outside this state or to remove the child from this state for a period of time exceeding 90 days. Upon motion by the parent having visitation rights and a finding by the court that it is against the best interests of the child for the custodian to so remove the child from this state, the court may deny permission to the custodian. Violation of a court order under this subsection may be deemed a change of circumstances under s. 767.32, allowing the court to modify the judgment with respect to custody, child support and visitation rights so as to permit withholding of a portion of the support payments to defray the added expense to the parent with visitation rights of exercising such rights or to modify a custody order.
"(7) Any person with visitation or custodial rights may notify the family court commissioner of any problem relating to visitation or custody. The family court commissioner shall refer the matter for investigation by the department of family conciliation or, if such department does not exist within the county, to another appropriate social service agency."
[2] In re Custody of D.M.M., 128 Wis. 2d 265, 382 N.W.2d 73 (Ct. App. 1985).
[3] Section 802.02(3), Stats., provides as follows:

"(3) AFFIRMATIVE DEFENSES. In pleading to a preceding pleading, a party shall set forth affirmatively any matter constituting an avoidance or affirmative defense including but not limited to the following: accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of a condition subsequent, failure or want of consideration, failure to mitigate damages, fraud, illegality, immunity, incompetence, injury by fellow servants, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, superseding cause, and waiver. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall permit amendment of the pleading to conform to a proper designation. If an affirmative defense permitted to be raised by motion under s. 802.06(2) is so raised, it need not be set forth in a subsequent pleading."
[4] The dissent would have the court resort to another chapter, ch. 48, to define "parent." However, the dissent fails to note that sec. 48.02, Stats., states: "In this chapter, unless otherwise defined ..." before it defines parents for the purposes of that chapter. (Emphasis added.) Indeed, within that chapter the term "parent" is further modified as "birth parent" in sec. 48.432(1)(am) as the mother designated on the birth certificate, the adjudicated father or the husband of the mother at the time of birth.

Under different chapters "parent" is defined in still different ways. For instance, in sec. 56.068(1)(b), Stats., an inmate of a minimum security institution may be eligible to leave confinement to visit a "parent." Subsection (1m) states the "`parent' includes a person who was previously a person acting as parent, as defined in s. 822.02(8), for the inmate." (Emphasis added.)
Therefore, it can be seen that the term "parent" is used in many different senses throughout the statutes. Rather than resolving the ambiguity created by the visitation statute, such definitions reinforce the fact that the term "parent" as used in the statutes must include a definition to avoid being found ambiguous.
In addition, where the legislature has intended a restrictive definition of the word "parent," it has carefully referred to the section including the definition it wished used or included a definition for an entire chapter. In the absence of either a blanket definition or a specific statutory reference, the court has no choice but to define the word "parent" as it is commonly and ordinarily understood.
[5] In the Laws of 1977, ch. 105, sec. 35, the legislature modified the wording of sec. 247.24(1)(c), Stats., to include greatgrandparents, then moved the section to the newly created visitation statute, sec. 247.245, created by ch. 105, sec. 39. Section 39 created sec. 247.245(1), which provided the first mention of a statutorily created parental right to visitation. All of ch. 247 of the statutes were renumbered to ch. 767 in ch. 32, sec. 50 of the Laws of 1979.
[1] Section 767.245 provides, in part, as follows: "(1) A parent is entitled to reasonable visitation rights unless ... visitation would endanger the child's ... health ... (4) The court may grant reasonable visitation privileges to a grandparent or greatgrandparent ... if the court determines that it is in the best interests ... of the child...."
[2] Section 247.24(1)(c), Stats. 1975, provided:

"247.24 Judgment: care and custody of minor children. (1) In rendering a judgment of annulment, divorce or legal separation, the court may:
"...
"(c) Grant reasonable visitation privileges to a grandparent of any minor child if the court determines that it is in the best interest and welfare of the child and issue any necessary order to enforce the same."
[3] Prior to the 1977 amendment to the Family Code, a relative was defined as "a parent, grandparent, brother, sister, uncle or aunt. ..." Section 48.02(12), Stats. 1975.
[4] The 1975 version, sec. 48.02(11), provided that, "Parent' means either a natural parent or a parent by adoption. If the child is born out of wedlock but not subsequently legitimated or adopted, `parent' means the natural mother and a person adjudged in a court proceeding to be the natural father."